# Richmond

## Mary Louise Hogan Doss v. Oswald Lee Martin.

June 15, 1964.

Record No. 5740.

Present, All the Justices.

*William Rosenberger, Jr.*, for the plaintiff in error.

*Aubrey E. Strode*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Oswald Lee Martin brought this action for damages against Mary Louise Hogan Doss and Charles Clayton Boley for injuries sustained when he was struck by a car driven by Mrs. Doss and owned by Boley. His evidence was struck out as to Boley for failure to prove agency, but he recovered a jury verdict for $10,000 against defendant Doss, on which the court entered judgment and she has appealed.

The questions raised by defendant's assignments of error are (1) whether the defendant was guilty of negligence; (2) whether the plaintiff was guilty of contributory negligence; (3) whether evidence of a test made as to the visibility of plaintiff's automobile was properly admitted; and (4) whether defendant's Instruction J was properly refused.

The accident occurred about 7:40 p.m., October 21, 1961, on Bedford avenue, within the corporate limits of the town of Altavista. Plaintiff and his wife were driving east on Bedford avenue when the left rear tire on plaintiff's white 1961 Plymouth went flat. Plaintiff pulled over to the curb and parked in order to change the tire. Bedford avenue at that point has a travel surface forty feet wide with a broken line in the middle, and for 600 feet to the west vision is unobstructed.

Plaintiff parked his car with the front about two feet away from his right-hand curb and the rear slightly farther away. His parking lights were on, the rear lights were burning, the trunk lid was opened and the car was within ten or fifteen feet of a street light in front of the car. By means of a horizontal bracket this street light extended several feet into the street. Another street light was burning on the other side of the street some twenty or thirty feet ahead of the car. The night was dark, the street was wet from recent rain and there was a little fog.

Plaintiff was in the process of changing the tire when a friend, Roy Shirlen, came along and offered to help. Shirlen took a flashlight from plaintiff's car and stood near the left rear fender. Plaintiff testified:

"The street light was extending eight or ten feet out and it was giving me plenty of light and I didn't need the [flash]light. He said if he could help me do anything he would kind of flag the traffic and watch out. I was tightening the lug bolts and some cars went on by, it was right heavy traffic on Saturday night, and I was tightening the lug bolts and I believe it was the third one I was tightening and he said, 'Watch out' and I looked back toward the way the car was coming and the lights when I looked around looked like they hit me, just hit me in the face, and so then the next thing I knew I was laying there and couldn't get my breath * *."

Plaintiff testified that he turned his head when Shirlen gave a warning but did not move his body.

On cross-examination plaintiff said he could have seen as far as 500 feet to the west (the direction from which defendant came) had he looked. He also testified that he was out into the street far enough to use a lug wrench while squatting down, and estimated that his body extended as much as three feet into the street from the wheel.

Shirlen testified that he stopped and insisted on helping plaintiff. He said that plaintiff's car lights were on and that the car was "practically under" a street light. Shirlen testified that he stood at the rear fender of plaintiff's car, alternately shining the flashlight on the tire and then toward oncoming traffic. He was watching for Martin and trying to help him too. He said he saw defendant's car coming toward them "a little bit closer" than other cars which had passed, and he said "Look out" or gave some word of warning. Shirlen testified:

"Well, I saw it [defendant's car] all the way around the bend. I was looking first at traffic and then at Mr. Martin and this car was coming a little bit closer than the other cars and I just assumed that it would go around like the other cars had gone, * * but when I saw it was coming so close I said something to Mr. Martin and by that time it was on us. I was watching the car all the time and I saw it was coming too close so I just kind of ducked in kind of against the car with my knees against Mr. Martin's car to keep from getting hit myself and at the same time I heard the impact and looked around after the other car had passed and I didn't see Mr. Martin for a minute or two and the next time I saw him he was lying almost on his stomach with his head under the left front wheel, * *."

Shirlen estimated the speed of defendant's car to be thirty to thirty-five miles an hour.

Henry S. Pittard, a car dealer who lived across the street, heard

the impact "like two cars had run together," and went to the scene and rendered aid. He testified that he later made a visibility test by parking a car in the approximate position of plaintiff's car, turning its tail lights on and then driving another car on Bedford avenue east toward the parked car. Pittard testified that the night was misty, the street was wet, but it wasn't raining, and weather conditions were otherwise similar to those on the night of the accident, and that the tail lights of the parked car could be seen from 200 steps away. He made the test at about seven-thirty at night. Defendant objected to the admission of this testimony.

Defendant testified that she and six others in her car were going to a movie at a speed of twenty-five or thirty miles an hour, and that she "most likely" had her lights on low beam because of oncoming traffic. She testified that "other cars were parked along the street all along there and I wasn't noticing any particular car." She said that she never saw the plaintiff's car, the plaintiff, or Mr. Shirlen; and that the first thing she knew "something hit the side of the car" as she was meeting a westbound car. She stopped within a few car lengths but did not go back to the scene of the accident.

■ *Spiegelman* v. *Birch, Adm'r*, 204 Va. 96, 129 S.E.2d 119, is a recent case in a long line of cases in which this court has said that negligence and contributory negligence are ordinarily questions of fact for the jury. This case presents no exception and the evidence here sustains the jury's findings on both these questions.

Defendant stated that she never saw plaintiff's white car with its tail lights aglow and its trunk lid open. She never saw plaintiff or his friend, although vision was unobstructed for at least 600 feet west of the impact. She did not see because she did not look, and the evidence was ample to support the finding of the jury that she was negligent in failing to keep a proper lookout. As the trial court said in overruling the motion to set aside the verdict, if the defendant had looked she could not have helped seeing the car "and, of course, the jury rightly concluded that the Defendant Doss was guilty of negligence and that that negligence proximately contributed to the accident and injuries." *Cf. Harris* v. *Howerton*, 169 Va. 647, 194 S.E. 692.

Similarly, whether plaintiff exercised reasonable care for his own safety under the conditions then existing was a question of fact. Plaintiff had a right to assume that drivers approaching from the west would be maintaining a proper lookout, *Bonich* v. *Waite*, 194 Va. 374, 73 S.E.2d 389. Other cars coming by that night did safely

pass him, and under the conditions shown by the evidence it was for the jury to determine whether the plaintiff was negligent. *Davis, Adm'x* v. *Scarborough*, 199 Va. 100, 105, 97 S.E.2d 731, 736.

Defendant argues that the plaintiff could have removed himself from the path of the defendant's car had he availed himself of the opportunity to do so by heeding the warning given by the lights of the approaching car "as his friend did," and "which he could have seen at least 500 feet away."

But had the plaintiff seen the lights of the defendant's car 500 feet away, he should not be charged with the duty, certainly as a matter of law, of anticipating that the driver of the car, with ample room to pass as other cars had done, would run him down in his clearly visible position. Even plaintiff's friend Shirlen, who was watching defendant's car, became alarmed at its direction of travel only in time to "duck" away from it.

Defendant theorizes that plaintiff backed into her car as she passed him and she argues that the physical marks on her car conclusively show that the accident could have happened in no other manner. These marks were along the right rear door and fender where the dirt had been wiped or brushed away. The testimony was that there were no such marks on the car prior to the accident and that there were no other visible marks or dents on the car after the accident.

The plaintiff testified that after Shirlen called "Watch out," he never moved or had time to move his body from his crouched position at the wheel of his car before he was hit, except to turn his head. The car hit him on his right hip. There was medical testimony that his injuries could have resulted only from "a tremendous blow," "a most severe direct blow." There was no dent in the defendant's car on the door or fender where the marks were.

The court instructed the jury that if they believed that the plaintiff walked or backed into the side of defendant's car and thereby was guilty of negligence which was a proximate cause of the accident, they should find for the defendant. The jury did not believe it happened that way and the evidence warranted their conclusion.

It was not reversible error to admit the evidence of the witness Pittard, who made the test referred to above and testified that he could see the tail lights burning on the parked car from about 200 steps away. While the conditions prevailing at the time of the experiment were not identical with those which existed at the time of the accident, they were substantially similar. "Where the con-

ditions are substantially similar in essential particulars, the evidence is admissible, and its weight is to be determined by the jury." *Norfolk & W. Ry. Co. v. Henderson,* 132 Va. 297, 323, 111 S.E. 277, 286.

The result of the Pittard test was merely that a car's tail lights were visible from 200 steps away under practically the same weather conditions as existed on the night of the accident. The distance of such visibility was in fact not an issue in the case. Defendant in her argument that the plaintiff was guilty of contributory negligence insisted that he could have seen the lights on her automobile for at least 500 feet away. If there was any error in admitting this testimony, which we do not hold, it was at most harmless error.

No error was committed in refusing defendant's Instruction J. It would have told the jury that it was the duty of the plaintiff to use reasonable care to look and to see what was open and obvious, and if he failed to do so he was guilty of negligence and if such negligence was a proximate cause of the accident they should find for the defendant. The court refused it because the same principle was covered by other instructions, particularly defendant's Instruction G, and its ruling was correct.

The trial court in overruling the motion to set aside the verdict expressed the opinion that "there was no error committed in this case on the part of the Court and * * as a matter of fact, I don't see how the jury very well could have decided the case otherwise. * *."

We find no substantial reason in the record to disagree with that view and the judgment below is accordingly

*Affirmed.*