# Staunton

## SHELTON HORSLEY STEVENS v. CHARLES E. SUMMERS, ET AL.

September 9, 1966.

Record No. 6220.

Present, All the Justices.

(1) Automobiles—Head-on Collision on Highway—Jury's Verdict for Plaintiff Proper.

(2) Evidence—Testimony as to Unidentified Skidmarks Held Relevant.

1. The pickup truck driven by plaintiff Stevens and a tractor-trailer driven by Summers and owned by McCauley collided at night on a straight road. Each driver testified that the vehicle of the other crossed over the center line into the wrong lane. The tractor-trailer was found after the accident off the road outside its lane and the truck in its lane. All debris was found under the damaged left front of the truck. Skidmarks found on the road could not with certainty be attributed to either vehicle. On these facts the issue of negligence was properly left to the jury because reasonable men could disagree as to the facts and the inferences to be drawn from them. Their verdict for plaintiff should not have been set aside because his testimony was not incredible, and the jury were the judges of its weight; their verdict against defendants on their respective counterclaims was also proper.

2. No error was committed by allowing plaintiff's son to testify as to skidmarks observed on the road the morning after the accident, though he could not say what vehicle made them. Since these were the only marks, it could be reasonably inferred that they were made by one of the vehicles involved in the accident. The evidence was therefore relevant, tending as it did to elucidate the inquiry on the basic question of negligence.

*Paul Whitehead* for the plaintiff in error.

*William A. Perkins, Jr.* (*Battle, Neal, Harris, Minor and Williams*, on brief), for the defendants in error.

SPRATLEY, J., delivered the opinion of the court.

Shelton Horsley Stevens, the plaintiff, filed a motion for judgment against Charles E. Summers and Walter L. McCauley, defendants, seeking to recover damages for personal injuries sustained by the plaintiff in a collision between his pickup truck and a tractor-trailer owned by McCauley, and driven by his employee, Summers.

Defendants answered, denying negligence on their part and asserting that plaintiff was guilty of contributory negligence. Each defendant also filed a counter-claim against Stevens, Summers claiming personal injury damages and McCauley claiming property damage.

A jury trial resulted in a verdict in favor of the plaintiff against both defendants in the sum of $6,500.00. The jury also found in favor of the plaintiff on the counter-claims of defendants.

Upon motion of defendants, the verdict of $6,500.00 in favor of plaintiff was set aside; but their motion to set aside the verdict on their counter-claims was overruled. Plaintiff, Stevens, sought and obtained this writ of error.

Plaintiff contends that the court erred in setting aside the $6,500.00 award of the jury.

Defendants assign cross-error to the action of the court in refusing to set aside the verdict as to their counter-claims, and in overruling their objection to the introduction of certain evidence. They argue that plaintiff's version of the accident is incredible.

The jury was fully and correctly instructed without objection. The evidence was in sharp conflict as to the position of the respective motor vehicles on the highway immediately before and at the time of their collision. There were only two eye-witnesses, Stevens and Summers. The remaining evidence consisted largely of the existence of certain physical facts.

Presented to us in the form of a written statement, no transcript of the testimony being available, the material facts may be summarized as follows:

The accident occurred shortly after 6:00 p. m., on Christmas night, December 25, 1963, on U. S. Highway 29, in Nelson County, Virginia. At the scene of the accident, Highway 29 runs in a generally northerly and southerly direction. It is a two-lane highway, one for southbound travel and one for northbound, with the traffic lanes clearly marked. At the time of the accident, it was

dark; but the weather was clear and the road was dry. The road was also straight with no defects in it; but with a "little dip" near where the accident occurred. Plaintiff was driving north in a pickup truck, and defendant, Summers, operating a tractor-trailer, was driving south. Both vehicles were heavily damaged on their front left sides. All debris resulting from the accident was found under the left front wheel of the pickup truck in the northbound lane.

State Troopers, who reached the scene of the accident shortly after its occurrence, and before the vehicles had been moved, found the tractor-trailer completely off the highway in a private driveway, on the west side of the road. The pickup truck was wholly in the northbound lane, with its left front wheel 3 feet, 6 inches, and its left rear wheel 7 feet, 3 inches, from the center of the road. One trooper said he saw skid marks 3 feet in length and about 3 feet west of the center line, "equidistant between the vehicles," but was unable to follow the marks to either one of them. Another State Trooper said he interviewed plaintiff, Stevens, in a hospital after the collision, and Stevens told him that he had tried to "split the difference" between the tractor-trailer and the pedestrian he saw on the road.

Stevens testified that as he was driving north about 35-40 miles per hour, he saw the lights of the tractor-trailer come up over a hill and on his side of the road; he thought that the tractor-trailer would get back in its own lane; he also saw someone walking on his side of the road, about 100 to 200 feet ahead of him on the hard surface shoulder, so he moved his truck over to the left side of his lane to avoid the pedestrian; that he got as far to his left as was necessary to keep from striking the pedestrian; that he slowed down in the meantime, but did not apply his brakes; that as he got closer to the tractor-trailer, the "tractor-trailer weaved over into the northbound lane," and kept coming towards him; and that "just as the tractor-trailer got to him, it cut away to the southbound lane and hit him at the moment it cut away." He repeatedly said he was never in the southbound lane.

Summers testified that as he came over a hill, he saw the plaintiff's truck approaching; that he took his foot off the accelerator, but did not apply his brakes; that the pickup truck came over into his lane; and that as he swerved to his right to avoid it, the vehicles collided. He said he never left the southbound lane, and did not see a pedestrian on the road.

Clen Stevens, a nephew of the plaintiff, said he arrived at the scene of the collision shortly after the accident, before the vehicles had been moved. He found the pickup truck entirely in its northbound lane, and the tractor-trailer in a yard of a home west of the hard surface of the southbound lane. Using a flashlight, he found debris on the northbound lane, but no scrape marks or tire marks leading into the southbound lane. He did find scrape marks which "went across the (center) line from the south lane to the north lane," which he attributed to the tractor-trailer.

Plaintiff's son, Shelton Lewis Stevens, 26 years of age, viewed the scene of the accident on the morning thereafter. He said that he then found three dual wheel skid marks in the northbound lane, north of the accident; and that the skid marks were approximately 1 foot apart and "were right in a row like they had skipped." He said that although he did not know when the marks were made, or who made them, they were the only marks on the highway the morning after the accident. He found oil and dirt in the northbound lane, but none in the southbound. Defendants objected to the testimony as to skid marks.

The principles governing our determination of this case are well stated by Mr. Justice I'Anson in *Commonwealth* v. *McNeely*, 204 Va. 218, 222, 129 S. E. 2d 687:

"But the power conferred on the trial judge under Code § 8-352 to set aside a jury verdict and enter final judgment can only be exercised where the verdict is plainly wrong or without credible evidence to support it. If there is a conflict in the testimony on a material point, or if reasonable men may differ in their conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given the testimony, the trial judge cannot substitute his conclusion for that of the jury merely because he would have voted for a different verdict if he had been on the jury. The weight of a jury's verdict, when there is credible evidence upon which it can be based, is not overborne by the trial judge's disapproval. The question involved under such circumstances is one of fact for determination by the jury, and their verdict cannot be disturbed by either the trial court or by this Court, and if improperly set aside by the trial court it will be reinstated by this Court." (Citing many cases.)

The statement in 13 Mich. Jur., Negligence, § 64, pages 593-4, is applicable here:

"The question of all kinds of negligence—primary, contributory, continuous and concurring—is usually one for the jury to determine. * * *

"Whether a negligence case should be submitted to a jury or determined by the court must always turn on the peculiar facts in the particular case. The general doctrine is that whether one has been guilty of negligence or not is a mixed question of law and fact, to be decided by the court when the facts are undisputed or conclusively proved, but not to be withdrawn from the jury when the facts are disputed or the evidence conflicting. Where the facts are conflicting and fairminded men might differ, the question should be submitted to the jury under proper instructions. * * *"

See *Carner, Adm'r v. Hendrix*, 205 Va. 24, 135 S. E. 2d 113; *Smith* v. *Carpenter*, 198 Va. 91, 92, 92 S. E. 2d 275; *Spiegelman* v. *Birch, Adm'r*, 204 Va. 96, 99, 129 S. E. 2d 119; *Doss* v. *Martin*, 205 Va. 306, 309, 136 S. E. 2d 854; *Allen* v. *Brooks*, 203 Va. 357, 361, 124 S. E. 2d 18.

Here, the issues were properly submitted to the jury, and the jury resolved each issue in Stevens' favor.

The evidence of plaintiff and his witnesses is not incredible.

In *Burke* v. *Scott*, 192 Va. 16, 23, 63 S. E. 2d 740, we said: "* * * To be incredible, evidence must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ."

It is manifest that the jury accepted the evidence of plaintiff as true, and rejected that of defendants. Although a trial court has power to set aside the verdict of a jury, it may not usurp the jury's role as a trier of facts and the weigher of testimony. *Commonwealth* v. *McNeely, supra*, 204 Va. 218, 222, and cases cited therein.

The fact that it was not conclusively shown that the tire marks reported by the son of the plaintiff came from the tractor-trailer does not affect the admissibility of his testimony; but only goes to its weight. Young Stevens frankly said that he did not know when the marks were made, or who made them. That they were the only marks present on the highway after the accident leads to an inference that they were left by one of the vehicles involved. Young Stevens only related what he saw for what it might be worth.

In *Railway Company* v. *Golladay*, 164 Va. 292, 309, 180 S. E. 400, quoting from Jones on Evidence, § 138, we said:

" 'But when there is such logical connection between the fact offered as evidence and the issuable fact that the proof of the former tends to make the latter more probable or improbable, the testimony proposed is relevant, if not too remote. The competency of a collateral fact to be used as a basis of legitimate argument is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, even in a slight degree, to elucidate the inquiry or to assist, though remotely, to a determination probably founded on truth.' "

See also *Adams* v. *Allen*, 202 Va. 941, 945, 121 S. E. 2d 364; *Spiegelman* v. *Birch, Adm'r, supra*; *Carner, Adm'r* v. *Hendrix, supra*; and *Canupp* v. *Wade*, 205 Va. 850, 854, 140 S. E. 2d 659.

We do not find that the admission of the testimony was prejudicial.

What we have said disposes of the cross-assignments of the defendants.

For the reasons stated, the judgment of the trial court setting aside the verdict in favor of the plaintiff is reversed; the verdict of the jury in favor of the plaintiff is reinstated; and final judgment is here entered in the amount of $6,500.00, with interest from date of verdict, and costs, in favor of Shelton Horsley Stevens, the plaintiff.

*Judgment reversed; verdict of the jury reinstated; and final judgment entered thereon.*