## Richmond

J & E EXPRESS, INC., and CHARLES SPEARS, JR.

v.

HANCOCK PEANUT COMPANY

June 8, 1979.

Record No. 771124.

Present: All the Justices.

*Donnell P. Davis (Richard A. Saunders; Furniss, Davis and Rashkind, on brief),* for plaintiffs in error.

*Richard C. Grizzard* for defendant in error.

HARRISON, J., delivered the opinion of the Court.

The Hancock Peanut Company sought to recover damages caused by the alleged negligence of Charles Spears, Jr., who in operating a tractor-trailer for his employer, J & E Express, Inc., struck and ruptured an extension pipe attached to plaintiff's warehouse sprinkler system. The subsequent damage to the peanuts stored in the building was stipulated at trial. The case was submitted to the jury on the issues of defendants' negligence and the proximate cause of the accident. The jury's verdict in favor of the defendants was set aside and judgment entered for the plaintiff for $39,295.30 with interest and costs based upon a finding by the trial court that, as a matter of law, the defendants were negligent and the plaintiff was free of contributory negligence.

Defendants assign error to the action of the trial court (1) in setting aside the jury's verdict, (2) in overruling defendants' motions to strike plaintiff's evidence and to enter summary judgment, and (3) in refusing to grant the defendants an instruction on contributory negligence.

Hancock operates its peanut business at a site west of the Town of Courtland. At this plant it uses a 200-foot frame warehouse for the cold storage of peanuts. Cargoes of peanuts delivered to and shipped from the warehouse are moved across an eight-inch thick reinforced concrete loading dock which extends the entire length of the building. The dock is an estimated 15 feet in width and is approximately five feet above ground level. Its entire length is covered by a roof which extends approximately 18 to 24 inches beyond the dock's outside edge. The overhang of the roof is of sufficient height to permit a standard trailer to be backed up to the loading dock. Beneath the roof and running the entire length of the dock is a longitudinal pipe of the building's sprinkler system. This pipe is located directly over and parallel to the outer edge of the dock, a distance of 12 feet 3 inches from ground level. At spaced intervals the water pipe is intersected by T-joints, and pipes which lead therefrom extend perpendicularly into the interior of the warehouse where peanuts are stored. It appears that only one T-

joint extends beyond the outer edge of the dock. It is admitted that this joint extends a distance of 5 5/8 inches farther than any other pipe of the spinkler system. It is this extension of pipe around which this case revolves.

About noon on December 19, 1973, Charles Spears, Jr., an employee of J & E Express, Inc., drove his employer's tractor-trailer "rig" upon Hancock's warehouse premises for the purpose of positioning the empty trailer[1] at the loading dock. It was to be left there to be loaded by Hancock's employees, and Spears was to pick up a loaded trailer and proceed on a designated trip. In backing up to the dock, the upper portion of defendants' trailer struck the extended T-joint. The impact caused a rupture of the sprinkling system within the warehouse and the damage to the peanuts stored there.

To establish primary negligence the plaintiff called three of its part-time employees as witnesses. They testified that at the time of the accident, they had gathered to eat lunch in a small room, known as the "scale room", located on the loading dock and along the side of the warehouse. George Flythe said that in looking through a window in the scale room, he observed defendants' truck some five or ten feet from the dock, backing up "at kind of an angle". Flythe said that the first time the trailer came back, "He didn't exactly hit it [the extension pipe], but I thought he was going to hit it, but he didn't exactly hit it." The witness said that Spears then pulled up some six or seven feet and started back again, at which time Flythe testified that he ran out on the loading dock and hollered and waved at him. The witness testified that by then the rear of defendants' trailer was "[a]lmost up to the platform".

Herbert Ellsworth, when asked to describe to the jury what happened, testified:

> He [Spears] was backing up to the plat-
> form and didn't get it [trailer] quite square to
> the platform, so he pulled up and when he
> backed up then, he tapped the pipe that was up
> there and pulled up to straighten it out. And
> when he backed up and straightened up, that's
> when he hit the pipe solid.

When asked how far the driver pulled up to straighten his trailer

---

[1]The defendants' trailer was of standard size, measuring 12 feet 6 inches from the ground to its top.

out, Ellsworth replied, "I can't exactly say. It wasn't too far, just average for a truck or a trailer to pull up and straighten it out." Ellsworth said Flythe didn't leave the scale room and holler at the driver until after the driver had backed up the first time, had pulled out and was coming back. The witness said that the trailer was about five or six feet from the dock when Flythe got outside to the loading dock and began waving his hands. This witness stated that he never left the scale room until after the accident.

Plaintiff's last witness was Louis Ellsworth, who said, "When it [defendants' trailer] backed up to the loading dock and it didn't hit the loading dock, it hit at an angle first and pulled up and backed up and hit the sprinkling system, the water system". The witness testified that Flythe went outside the scale room when defendants' trailer "tapped the first time". He stated that Flythe did his waving from the loading dock, "right in front of the scale", and that when the truck hit the pipe and the loading dock, "[t]he water system busted".

After the court denied defendants' motion to strike plaintiff's evidence and grant them summary judgment, the defendant Spears testified. He said the trailer was empty and that he was to park it at the loading dock, anchor it, and then pick up a loaded trailer from the same dock. Spears testified that "I pulled in the yard, went where the platform was lined up with trailers, made a swing up and backed up, set my trailer down". He said there were five or six other trailers parked along the loading dock; that no one was directing traffic; and that he observed no one on the loading dock either yelling or waving until after he had "set my trailer down". He said that the window on the driver's side was down because "I always back up with the window down and my head out so I can watch from both sides". Finally Spears testified that he only had to back up one time and that he parked "about two feet from the loading dock".

Harvey G. Pope, Vice-President of the Hancock Peanut Company, testified that the sprinkler system had been in operation since 1963, but that he was not aware until the date of the accident that the pipe projected beyond the dock and short of the canopy. He said, "We had been all this period of time without any problems, so I never paid any attention to it. All I knew is that it was put in and paid for."

The evidence in this case is essentially free of conflict. The damages sustained by the plaintiff were stipulated. Hancock admits that it placed no signs, alarms, posts, barriers or any type of

device to alert the public or the operator of a truck that one of the pipes of its sprinkler system extended beyond the company's loading dock. The president of J & E Express, Inc., testified, without contradiction, that the extension could not be detected except by one taking a side view of the sprinkler system pipes. He added that someone like Spears, who was facing the dock, would not detect the projection. Plaintiff admits that there is no evidence anywhere in the record that plaintiff knew about the pipe extension until December 19, 1973. It is therefore in no position to argue that defendants' driver should have been aware of a hazard which the company had not discovered in ten years.

The sole issue we consider is whether as a matter of law Spears acted negligently in the manner in which he operated and positioned his truck at Hancock's dock. His testimony is that he made a routine maneuver, observed no one hollering or waving, and was unaware that his trailer had struck the projected pipe until after he had anchored the trailer. The only testimony dealing with defendants' negligence was that given by plaintiff's three part-time employees. At the time of the accident two were inside the small scale room. It is noteworthy that these three men did not testify that the driver was not looking, was not in control of his vehicle, was backing at too rapid a rate of speed or was doing anything untoward.

According to the testimony of the employees, Spears, in trying to square his trailer with the loading dock, pulled up one or two additional times after having first backed the truck at an angle. On one parking attempt Spears "tapped" the projected pipe, and this caught the attention of George Flythe who was prompted to go outside on the loading dock, wave his hands and holler at the driver. However, Flythe testified that at the time he was waving, he was standing near a hand shovel which is shown in a photograph as lying on the loading dock directly under the extended pipe. If this was the case it would have been difficult for Spears to have seen, heard or understood Flythe's warnings.

For one to operate properly and safely a large tractor-trailer, the driver should be possessed of experience and skill. Spears was trying to position the rear of his trailer square with the loading dock, to facilitate the loading of peanuts therein. The problem, not of defendant's making, was that at the particular space on the dock there was a 5⅝-inch obstruction of which he was unaware and which prevented him from completely accomplishing his objective.

The factual issue in this case is a narrow one. The plaintiff claims that Spears did not maintain a proper lookout while backing into the loading dock, and failed to heed the cautionary warnings that were given him. The defendant driver says that he did maintain a proper lookout and that he observed no one giving any warnings. Whether the warnings were given in a manner and from a place where they could be observed and understood by Spears is a question of fact. And, in view of the conditions that existed at this particular portion of Hancock's loading dock, it is also a question of fact whether Spears' actions constituted negligence and were a proximate cause of the accident.

■ Resolving conflicts in the evidence is a prerogative of the jury. A court should not determine as a matter of law that a party is guilty of or free from negligence unless the evidence is such that reasonable men, after weighing the evidence and drawing all just inferences therefrom, could reach but one conclusion. The principles governing our determination in this case were well stated by Mr. Chief Justice I'Anson, then Justice, in *Commonwealth* v. *McNeely,* 204 Va. 218, 222, 129 S.E.2d 687, 689-90 (1963), and reiterated by us in *Stevens* v. *Summers,* 207 Va. 320, 323, 150 S.E.2d 83, 85 (1966). In these cases we said:

> But the power conferred on the trial judge under Code § 8-352 to set aside a jury verdict and enter final judgment can only be exercised where the verdict is plainly wrong or without credible evidence to support it. If there is a conflict in the testimony on a material point, or if reasonable men may differ in their conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given the testimony, the trial judge cannot substitute his conclusion for that of the jury merely because he would have voted for a different verdict if he had been on the jury. The weight of a jury's verdict, when there is credible evidence upon which it can be based, is not overborne by the trial judge's disapproval. The question involved under such circumstances is one of fact for determination by the jury, and their verdict cannot be disturbed by either the trial court or by this Court, and if improperly set aside by the trial court it will be reinstated by this Court.

■ It is our conclusion that the trial court properly submitted the issue of defendants' negligence to the jury. The jury accepted the evidence of the defendants and rejected that of the plaintiff. It found that the defendant truck driver was not guilty of negligence which proximately caused the damage sustained by Hancock. There is credible evidence to sustain its verdict. Accordingly, the judgment of the trial court is reversed. The verdict of the jury in favor of the defendants is reinstated, and final judgment will be entered here in their favor.

*Reversed and final judgment.*