Present:   Carrico, C.J., Compton,[*] Lacy, Hassell, Keenan, Koontz, and Kinser, JJ.

NORFOLK BEVERAGE COMPANY,
INCORPORATED

                  OPINION BY JUSTICE LEROY R. HASSELL, SR.

v.  Record No. 990528                    March 3, 2000

KWANG JA CHO, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Edward W. Hanson, Jr., Judge

In this appeal of judgments entered in consolidated tort actions, we consider whether the jury's verdicts are excessive and whether the circuit court erred by permitting an expert witness to render opinions that certain medical expenses that the plaintiffs incurred were related to their injuries.

Kwang Ja Cho and Pyong Tu Cho filed separate amended motions for judgment against Norfolk Beverage Company, Inc., and its employee, Donald R. Buckner.  The Chos alleged that they were injured when Buckner committed an assault upon them while acting within the scope of his employment.  The circuit court consolidated the cases.  The Chos settled their claims against Buckner, and a jury returned verdicts against Norfolk Beverage in favor of Mr. Cho in the amount of $160,000, and in favor of Mrs. Cho in the amount of $310,000.  The circuit

---

[*] Justice Compton participated in the hearing and decision of this case prior to the effective date of his retirement on February 2, 2000.

court entered judgments confirming the verdicts, and Norfolk Beverage appeals.

Applying established principles of appellate review, we shall summarize the evidence in the light most favorable to the Chos, who come to this Court armed with jury verdicts confirmed by the circuit court. Mr. and Mrs. Cho operate Joe's Upholstery Shop in a shopping center in Virginia Beach. On the morning of May 2, 1995, Mr. Cho left the shop and got into his car. Mr. Cho was unable to drive out of the parking lot because a Norfolk Beverage truck was parked in a manner that prevented him from exiting the parking lot.

Mr. Cho approached Buckner, who was seated in the truck, and asked him to move the truck. Buckner replied that he was entitled to park the truck in any space for 15 to 20 minutes. Mr. Cho responded that he had a dental appointment and again asked Buckner to move the truck. Buckner cursed at Mr. Cho, who then returned to his car and waited for Buckner to move the truck.

After waiting for a moment, Mr. Cho "honked the horn twice," but Buckner did not respond. Mr. Cho got out of his car and walked toward Buckner, who was still sitting in the truck. As Mr. Cho walked toward the truck, Buckner opened a door and told Mr. Cho not to touch the truck. Buckner kicked Mr. Cho in the head, causing him to fall on the pavement. Mr.

2

Cho directed his employee, Alexander Stith, Jr., who had witnessed the altercation, to "[g]o call [the] police."

When Stith entered Joe's Upholstery Shop to place a telephone call to the police, he informed Mrs. Cho that her husband had been assaulted. She left the shop and went to the parking lot where she encountered Buckner, who had begun to drive away. Mrs. Cho told Buckner: "Stop, stop. . . . Police came. Stop, police came." Buckner stopped the truck, opened the door, and hit Mrs. Cho in her neck, causing her to fall on the pavement. Mrs. Cho stood up, and Buckner kicked her on her waist, causing her again to fall to the pavement. Mrs. Cho stood up, and Buckner hit her in her chest, causing her to fall on the pavement a third time. Subsequently, police officers and emergency response personnel arrived at the shopping center, and the Chos were transported in an ambulance to a hospital where they received medical treatment.

Mr. Cho experienced pain in his head and ear as a result of the assault. His face was swollen, and he suffered auditory problems related to the assault. Mrs. Cho suffered bruises and a back injury. Mrs. Cho experienced pain in her neck and headaches.

During the trial, Mrs. Cho introduced medical bills and an exhibit which included a summary of those bills. The summary identified the names of various health care providers

that had rendered treatment to Mrs. Cho and the costs of that treatment. The summary also contained the total amount of Mrs. Cho's medical bills, $8,653.81. Similarly, Mr. Cho introduced an exhibit which contained the names of each health care provider that rendered treatment to him and the costs of his treatment. His exhibit contained the total amount of his bills, $1,336.75.

Dr. Steven Gershon, a physiatrist, testified with a reasonable degree of medical certainty that the medical bills contained in the plaintiffs' exhibits represented treatment for injuries that Mr. and Mrs. Cho sustained when Buckner assaulted them. Norfolk Beverage objected and asserted that Dr. Gershon was not qualified to render opinions that treatment by doctors outside his field of expertise was causally related to the plaintiffs' injuries. The circuit court overruled the objection and permitted Dr. Gershon's testimony. Norfolk Beverage, relying upon our decision in McMunn v. Tatum, 237 Va. 558, 379 S.E.2d 908 (1989), argues that the circuit court erred by permitting Dr. Gershon to render opinions that the plaintiffs' bills were incurred for treatment of injuries sustained in the assaults because the plaintiffs failed to establish a foundation to qualify Dr. Gershon as an expert competent to render opinions on whether

4

the bills were medically necessary or causally related.  We disagree with Norfolk Beverage.

In McMunn, we considered "whether it was error to admit proof of [a] plaintiff's medical bills without foundation evidence that they were a necessary consequence of the defendant's negligence."  Id. at 560, 379 S.E.2d at 909.  The plaintiff, Charlotte A. Tatum, filed an action for medical negligence against her dentist, Michael O. McMunn.  At trial, Tatum offered in evidence an exhibit consisting of 49 pages of medical, hospital, and pharmaceutical bills attached to a summary sheet, which contained a total of the bills.  Tatum testified that certain bills were unrelated to her claim against Dr. McMunn, and she deleted all charges she considered unrelated to that claim.  She also testified that she received the bills, but she did not qualify as an expert witness.  McMunn objected to this evidence on the basis that it lacked a foundation to show that the expenses claimed were necessarily incurred as a result of his alleged negligence.  The circuit court admitted the exhibit.  Id. at 566-67, 379 S.E.2d at 912-13.

We stated that

> "[t]he question whether a particular treatment is medically necessary, however, and the often more difficult question whether it is causally related to a condition resulting from some act or omission on a defendant's part, can usually be determined only by

5

a medical expert qualified in the appropriate field who has studied the plaintiff's particular case. The mere receipt of bills regular on their face by a plaintiff furnishes no evidence of medical necessity or causal relationship. The unfairness to the defendant of receiving such proof without expert foundation in a case of the kind now before us is obvious.

"We now hold that where the defendant objects to the introduction of medical bills, indicating that the defendant's evidence will raise a substantial contest as to either the question of medical necessity or the question of causal relationship, the court may admit the challenged medical bills only with foundation expert testimony tending to establish medical necessity or causal relationship, or both, as appropriate."

Id. at 569, 379 S.E.2d at 914. In McMunn, we examined the record in light of the aforementioned principles, and we held that the record contained sufficient evidence of medical necessity and causal relationship. Id. at 570, 379 S.E.2d at 914-15.

Here, we hold that the circuit court did not err in admitting the plaintiffs' medical summaries. Dr. Gershon, a physiatrist who was board certified in physical medicine and rehabilitation, testified that he performed separate, independent medical evaluations of Mr. and Mrs. Cho. He reviewed all the plaintiffs' medical records related to their treatment, including ancillary studies that had been performed. He conducted comprehensive physical examinations upon them, took their medical histories, evaluated their conditions, and made recommendations for medical treatment.

6

He performed a neurological systems examination, a mechanical systems evaluation, and a musculoskeletal systems evaluation on Mr. and Mrs. Cho. Even though the exhibits that were introduced in evidence contained medical bills from hospitals, radiologists, family practitioners, neurologists, emergency room physicians, and other health care providers, we hold that in view of Dr. Gershon's expertise, the circuit court did not err in permitting him to render opinions with a reasonable degree of medical certainty that the treatment the Chos received was reasonable and causally related to the assaults.

Next, Norfolk Beverage argues that the jury's awards of $160,000 and $310,000 to Mr. and Mrs. Cho, respectively, are excessive and not products of fair and impartial decisions because Mr. Cho's medical bills totaled $1,336.75, and Mrs. Cho's medical and physical therapy bills totaled $8,653.81. Norfolk Beverage says that neither plaintiff suffered any permanent injury, lost wages, or disability, and that the jury's compensatory damage awards suggest that the jury sought, in part, to punish Norfolk Beverage rather than fairly and impartially compensate the plaintiffs for their injuries.

We have held that, generally, a circuit court should not disturb a jury verdict awarding damages which has been rendered fairly and is based upon competent evidence. However, a jury verdict is not beyond the control of the

courts, and courts have the duty to correct a verdict that plainly appears to be unfair or would result in a miscarriage of justice.  Poulston v. Rock, 251 Va. 254, 258, 467 S.E.2d 479, 481 (1996); Edmiston v. Kupsenel, 205 Va. 198, 202, 135 S.E.2d 777, 780 (1964).  The issue whether a verdict is excessive is initially within the sound discretion of the circuit court and, on appeal, the standard of review is whether the circuit court abused its discretion.  Virginia Elec. & Power Co. v. Dungee, 258 Va. 235, 261-62, 520 S.E.2d 164, 180 (1999); accord Modaber v. Kelley, 232 Va. 60, 69, 348 S.E.2d 233, 238 (1986); American Oil Co. v. Nicholas, 156 Va. 1, 12, 157 S.E. 754, 758 (1931).

In Smithey v. Sinclair Refining Co., 203 Va. 142, 146, 122 S.E.2d 872, 875-76 (1961), we stated the following principles which are equally pertinent here:

> "In a case where the verdict of a jury is attacked on the ground that it is excessive, the rules controlling the actions of the court in relation thereto are clear and well defined.  If the verdict merely appears to be large and more than the trial judge would have awarded had he been a member of the jury, it ought not to be disturbed, for to do so the judge must then do what he may not legally do, that is, substitute his judgment for that of the jury.  Aronovitch v. Ayres, 169 Va. 308, 328, 193 S.E. 524, 531 [1937]; Simmons v. Boyd, 199 Va. 806, 811, 812, 102 S.E.2d 292, 296 [1958].
> "But if it appears that the verdict is so excessive as to shock the conscience of the court and to create the impression that the jury has been influenced by passion, corruption or prejudice, or has misconceived or misunderstood the facts or the

8

law, or if the award is so out of proportion to the injuries suffered to suggest that it is not the product of a fair and impartial decision, then it becomes the plain duty of the judge, acting within his legal authority, to correct the injustice."

Accord Poulston, 251 Va. at 258-59, 467 S.E.2d at 481-82.

Applying the aforementioned principles, we hold that the circuit court did not abuse its discretion in confirming the jury's verdicts. The jury was instructed, without objection, as follows:

"If you find your verdict for either plaintiff, then in determining the damages to which they are entitled, you may consider any of the following which you believe by the greater weight of the evidence was caused by the battery by Mr. Buckner:
"1. the bills of health care providers admitted in evidence;
"2. all physical injury the Chos suffered;
"3. any shame, humiliation, embarrassment or indignity to their feelings that they suffered;
"You may also consider in awarding damages the insulting character of the injury, Mr. Buckner's reason for injuring the Chos, and any other circumstances which make the injury more serious, if any of these things are shown by the evidence.
"Your verdict should be for such sum as will fairly and fully compensate the plaintiff for the damages sustained as a result of the battery."

The jury was entitled to consider the aforementioned elements in assessing damages against Norfolk Beverage. In view of this jury instruction and the evidence of record, including the attack upon the Chos, the humiliation they experienced, and the injuries that they incurred, the amounts of the jury verdicts are not shocking to this Court.

9

Finding no reversible error in the record, we will affirm the judgments of the circuit court.

Affirmed.