Present:  All the Justices

CITY OF BEDFORD
                          OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 001927          June 8, 2001

GUY DUVALL ZIMMERMAN

          FROM THE CIRCUIT COURT OF BEDFORD COUNTY
                James W. Updike, Jr., Judge

                              I.

     The primary issue that we consider in this appeal is

whether the plaintiff was guilty of contributory negligence as

a matter of law.

                             II.

     The plaintiff, Guy Duvall Zimmerman, filed a motion for

judgment against the City of Bedford, which operates an

electric power department.  He alleged that he was injured as

a result of the City's failure to turn off electrical power to

a temporary power meter base.  The City admitted that it was

negligent, but asserted that the plaintiff was guilty of

contributory negligence.

     At a jury trial, the circuit court denied the City's

motion to strike the plaintiff's evidence on the basis that

the plaintiff was guilty of contributory negligence as a

matter of law, and the jury returned a verdict in favor of the

plaintiff in the amount of $170,000.  The circuit court

entered a judgment confirming the jury's verdict, and the City appeals.

III.

A.

In accordance with well-established principles, we will recite the facts in the light most favorable to the plaintiff, the prevailing party at trial. Rice v. Charles, 260 Va. 157, 161, 532 S.E.2d 318, 320 (2000). "The verdict of the jury in favor of [Zimmerman], upon which the [circuit] court entered judgment, settles all conflicts of testimony in [his] favor and entitles [him] to all just inferences deducible therefrom. Fortified by the jury's verdict and the judgment of the court, [Zimmerman] occupies the most favored position known to the law." Pugsley v. Privette, 220 Va. 892, 901, 263 S.E.2d 69, 76 (1980) (citing Tri-State Coach Corp. v. Walsh, 188 Va. 299, 303-04, 49 S.E.2d 363, 365 (1948)); accord Cooper Industries v. Melendez, 260 Va. 578, 584, 537 S.E.2d 580, 583 (2000); Norfolk Beverage Company v. Cho, 259 Va. 348, 350, 525 S.E.2d 287, 288 (2000).

B.

Zimmerman, a Class B electrical subcontractor, installed electrical wiring at a house under construction at 1405 Jefferson Terrace in Bedford. The City's electric department supplied electric power to the subdivision where the house was

located. Zimmerman installed a temporary meter base at the residential construction site. The temporary meter base was mounted on a wooden post a few feet away from the City's transformer box, which is used to transfer electric power from underground distribution lines to individual residences.

After Zimmerman had installed the post and the temporary meter base, the City's employees connected the wires from the temporary meter base to the transformer box. The City's employees also installed an electric meter which was attached to the temporary meter base. The meter measured the amount of electric current used. After Zimmerman had completed the installation of the electric wiring in the home, the City's building inspector approved the work, and a work order was submitted to the City requesting that it change the temporary electric service to permanent electric service.

In accordance with certain procedures utilized by the City, its employees were supposed to terminate electric power to the temporary meter base by disconnecting the wires that extended from the temporary post to the transformer box. The City's employees would then remove the meter from the temporary meter base and place the meter into a permanent meter base on the house.

Calvin R. Fields, who was the line superintendent in the City's electric department, testified that if the City failed

to terminate power to a temporary meter base, the City's employees would place a plastic cover over the meter base because it should not be left "opened and energized." When asked, "[i]s there ever a situation in the City of Bedford in your experience where you would leave the temporary hooked up, take the meter out, put it over to the house and leave [the temporary base] open?," Fields responded, "No." Fields also stated that he had never seen an "energized" temporary meter base that did not have either a cover on it or a meter in it.

Fields gave a service order to change the electric service at the site where Zimmerman was working from temporary status to permanent status to Dennis Krantz, a City employee. On the morning of March 14, 1996, Zimmerman spoke to Fields and asked him whether the electric power that served the temporary post had been cut off. Fields responded that electric power to the temporary post "will be unhooked." "[H]e looked at his watch, [and said], 'It is unhooked.' He [said], 'You can get it any time you want to.' "

Subsequently, Zimmerman and his grandson, Ronnie A. Angle, returned to the residence that day to remove the post and temporary meter base. Zimmerman visually inspected the temporary meter base. The meter was not in the meter base. The City had not placed a cover over the meter base. These facts indicated to Zimmerman that the City had terminated the

4

source of electric power that had served the temporary meter base. Zimmerman had never "seen a situation where [the meter base] had been left open and it was energized."

Zimmerman had previously removed temporary posts from residential construction sites in Bedford at least 75 times. On each prior occasion, the City's employees had removed the meter from the temporary post after the City's employees had connected the permanent power to the house. When Zimmerman approached the post that he had installed at this construction site, he saw the temporary post without a meter or a cover. Zimmerman, in his experience as an electrical subcontractor in the City of Bedford, had never encountered a temporary meter base which was energized with power that did not have a meter in it or a cover on it. He testified that "[w]hen they leave the meter base hot, if they don't leave the meter in it, they put a plastic cover over it to protect it."

While removing his temporary post and meter base, Zimmerman cut the wires that extended from the temporary post to the transformer, "some sparks flew and [his] hands went up in the air." Zimmerman was injured as a result of an electric shock.

During cross-examination, in response to the question, "[d]o you agree that the person who is dealing with the wire is the one who has the duty to positively know that it is

energized or de-energized?," Zimmerman responded, "[y]es, sir." Zimmerman stated, however, "I knew from my experience with [Fields] I could believe him that he would do what he told me." Even though Zimmerman had a volt meter which he could have used to determine whether the electricity had been disconnected before cutting the wires, he failed to use it.

Fields testified that after the accident, he spoke with Zimmerman who stated that Angle had warned Zimmerman that he should not cut the wires because they may "still be hooked up to the transformer." Fields stated that Zimmerman said, "he went ahead and cut them anyway." Zimmerman denied making those statements.

The City's expert witness, Frank E. Mitchell, testified that an electrical contractor must make an independent determination whether the source of power to a temporary meter base has been terminated. However, Mitchell also testified that in his 43 years as an electrician, he had never encountered a temporary meter base which was connected to an electrical source and the meter had been "pulled out and left open." Mitchell gave the following testimony:

> "Q: [T]he superintendent said the service order was put in, and, in fact, the work was done that morning and never cut off. You haven't encountered that situation, have you?
>
> "A: No.

6

"Q: If anything is energized, you expect a cover to be on it, if it is a meter base?

"A: Yes, if it was, it was hot I would say it would be, right."

IV.

The City, relying principally upon Kelly v. Virginia Elec. & Power Co., 238 Va. 32, 381 S.E.2d 219 (1989), and Watson v. Virginia Elec. & Power Co., 199 Va. 570, 100 S.E.2d 774 (1957), argues that the plaintiff was guilty of contributory negligence as a matter of law. We disagree with the City.

The legal principles pertinent to our resolution of this appeal are well established in our jurisprudence:

"Resolving conflicts in the evidence is a prerogative of the jury. A court should not determine as a matter of law that a party is guilty of or free from negligence unless the evidence is such that reasonable [persons], after weighing the evidence and drawing all just inferences therefrom, could reach but one conclusion."

J & E Express, Inc. v. Hancock Peanut Co., 220 Va. 57, 62, 255 S.E.2d 481, 485 (1979); accord Loving v. Hayden, 245 Va. 441, 444, 429 S.E.2d 8, 10 (1993). Additionally, we have stated repeatedly that ordinarily, "questions of contributory negligence must be resolved by the jury." Loving, 245 Va. at 444, 429 S.E.2d at 10; Holland v. Shively, 243 Va. 308, 311, 415 S.E.2d 222, 224 (1992); Artrip v. E.E. Berry Equipment Co., 240 Va. 354, 358, 397 S.E.2d 821, 823 (1990).

7

In the present case, whether Zimmerman's conduct was reasonable is a question of fact which was resolved by the jury. Even though Zimmerman testified that a Class B electrical contractor has a duty to ascertain whether the supply of electricity to wires has been terminated, the jury could have found that Zimmerman complied with this duty because the City's line superintendent had informed him that the source of power had been terminated. The jury could have also concluded that the fact that the meter base was uncovered and the meter removed from the temporary base and affixed to the permanent meter base led Zimmerman to conclude that the power source to the temporary meter base had been disconnected. Furthermore, the jury was entitled to consider the testimony of the City's own expert witness who had never encountered a temporary meter base with an electrical source of power where the meter had been "pulled out and left open." And, we note that the jury was free to reject Fields' statement that Angle had warned Zimmerman that the power source to the temporary meter base may not have been disconnected.

We also observe that our decisions in Watson and Kelly are not dispositive of this appeal. In Watson, we held that a decedent, who was electrocuted when his metal pipe made contact with high voltage electric wires, was guilty of

8

contributory negligence as a matter of law. 199 Va. at 576, 100 S.E.2d at 779. We noted in Watson that there were no obstructions which would have prevented the decedent from viewing the overhead electric wires. In Kelly, we held that a plaintiff, who was injured when his aluminum ladder made contact with a high voltage uninsulated overhead wire, was guilty of contributory negligence as a matter of law. 238 Va. at 41, 381 S.E.2d at 224. We pointed out that the presence of a large transformer with wires attached to it, which were open, obvious, and in plain view, should have alerted the plaintiff that he ought not manipulate an aluminum ladder within three feet of a wire that transmitted electricity. 238 Va. at 40, 381 S.E.2d at 223.

Unlike the facts in Watson and Kelly, the plaintiff in this case was specifically informed by the supplier of the source of electricity that the electricity had been terminated, and the jury was entitled to conclude, in view of the facts in this record, that the plaintiff's conduct was reasonable.

Next, the City argues that the circuit court erred in failing to grant certain jury instructions. The City requested that the circuit court grant the following proposed jury instructions which state:

P.

9

"The Court instructs the jury that the plaintiff, before he cut the line that he claims shocked him, had a duty to exercise that degree of care and skill that reasonably prudent electrical contractors and others who work regularly with electrical distribution lines would exercise, to determine whether or not the line was charged with electricity before he cut it.

"If you find from the greater weight of the evidence that the plaintiff failed to perform this duty, then he was negligent."

R.

"The Court instructs the jury that when the plaintiff cut the line charged with electricity, he had a duty to do so in a manner that was not dangerous to himself if he did not know whether the line was hot or not when he cut it.

"If you find from the greater weight of the evidence that the plaintiff failed to perform this duty, then he was negligent."

In refusing the proffered instructions, the circuit court stated:

"It is the Court's feeling that this jury needs to be instructed and will be instructed with other instructions on negligence, contributory negligence, assumption of the risk and all of those matters are covered in other instructions.  P therefore becomes argumentative.
. . . .

"R is unnecessary in view of other instructions; refused, covered in other instructions and argumentative."

We agree that the circuit court did not err in failing to grant the City's proposed instructions.  We have reviewed the jury instructions which were granted, and we hold that the refused instructions were duplicative of other instructions.

10

V.

In view of our holdings, we need not consider the parties' remaining arguments.  Accordingly, we will affirm the judgment of the circuit court.

Affirmed.

JUSTICE KOONTZ, with whom CHIEF JUSTICE CARRICO and JUSTICE KINSER join, dissenting.

I respectfully dissent.  In this appeal, the City of Bedford has the burden to show "that there is no conflict in the evidence of contributory negligence, and that there is no direct and reasonable inference to be drawn from the evidence as a whole, sustaining the conclusion that [Guy Duvall Zimmerman] was free of contributory negligence."  Virginia Electric and Power Co. v. Wright, 170 Va. 442, 448-49, 196 S.E. 580, 582 (1938).  In my view, the City has met that burden.

The pertinent facts are not complicated or materially in dispute.  Beyond question, the City's employees negligently failed to disconnect the original underground power line that supplied electric energy from its nearby transformer box to the temporary meter base which had been installed by Zimmerman at a construction site for a new house.  The City's employees also negligently failed to cover the temporary meter base after removing the meter, placing it into a permanent meter

11

base on the house, and energizing the new underground power line from the transformer box to the meter. Moreover, another City employee verbally assured Zimmerman that the power line in question was "unhooked," or no longer energized. Upon these facts, at trial the City admitted that it was negligent.

The critical facts regarding the issue of contributory negligence, however, were established by Zimmerman's testimony. Upon direct examination, Zimmerman testified that he was a licensed Class B electrical contractor with over twenty-five years of experience in residential electrical contracting. With regard to the power line in question, he testified that "I started pulling the [power line] up because it [was] very shallow in the ground. I pulled it on over to the transformer. I pulled on it a little bit and it was a little stuck." Zimmerman testified that he then cut the power line with his "cutters" without first testing the line with his available voltage meter. Upon cutting the power line, Zimmerman received an electrical shock that resulted in his personal injuries. This testimony shows that Zimmerman failed to act as a reasonable person with his knowledge of electricity would have acted for his own safety under the circumstances. But Zimmerman's testimony on cross-examination is even more conclusive on that issue.

Zimmerman conceded that "the person who is dealing with the wire is the one who has the duty to positively know that it is energized or de-energized."  He testified, however, that he was not "positively sure" that the power line was unhooked and that he could have tested it with his voltage meter.  Moreover, when he pulled on the line he did so lightly because "[i]f it [was] stuck in the transformer, I wasn't taking a chance on hitting hot lines or something."  Finally, Zimmerman testified that if he had cut each of the three wires in the power line separately, rather than cutting all three at the same time, he could have "totally eliminate[d] the danger of shock."

"[T]he danger of electrical energy is a matter of common knowledge to all persons of ordinary intelligence and experience."  Watson v. Virginia Electric and Power Co., 199 Va. 570, 575, 100 S.E.2d 774, 778 (1957).  Here, Zimmerman not only knew of that danger, but he admittedly adopted a careless course of conduct that unnecessarily exposed him to injury from that danger.  A reasonable, prudent person would not fail to test a power line before cutting it.  An energized power line is unforgiving; it affords only one opportunity to test it to avoid an electrical shock.  Moreover, a reasonable, prudent person knowing, as Zimmerman did, that cutting each wire in the power line separately would totally eliminate the

13

danger of shock if the line happened to be energized would not cut the line in any other way. Surely, an experienced electrician concerned with his safety would act in accord with that knowledge.

Contrary to the view taken by the majority in this case, whether Zimmerman's conduct was reasonable is not a question that should have been resolved by the jury. Rather, "when persons of reasonable minds could not differ upon the conclusion that [contributory] negligence has been established, it is the duty of the trial court to so rule." Kelly v. Virginia Power, 238 Va. 32, 39, 381 S.E.2d 219, 222 (1989). Zimmerman's testimony established his careless, if not reckless, conduct. There is no conflict in that evidence and no direct and reasonable inference to be drawn from the evidence as a whole, sustaining a conclusion that he was free of contributory negligence. Regardless of the negligence of the City, Zimmerman knew that the power line might still be connected to the transformer box and energized when he elected to cut it without first testing it.

It is well settled that the issue of contributory negligence is generally a question for the jury to determine. The prerogative of the jury in doing so is to resolve conflicts in the evidence. That prerogative, however, does not permit the jury to weigh the evidence and assign degrees

14

of negligence between the defendant and the plaintiff in a personal injury suit. In the present case, the evidence shows that both the City and Zimmerman were negligent and that the negligence of both efficiently contributed to Zimmerman's injuries. Comparative negligence is not the law of this Commonwealth; contributory negligence is an absolute bar to recovery.

For these reasons, I would hold that the trial court erred in submitting the issue of Zimmerman's contributory negligence to the jury. Thus, I would reverse the judgment in favor of Zimmerman and enter final judgment in favor of the City.