Present:  All the Justices

DARICK DEMORRIS WALKER

v.  Record Nos. 990096 & 990097

OPINION BY JUSTICE ELIZABETH B. LACY
June 11, 1999

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
James B. Wilkinson, Judge

Darick Demorris Walker was indicted for the capital murder of Stanley Roger Beale and Clarence Threat within a three-year period, Code § 18.2-31(8), for four counts of the use of a firearm in the commission of a felony, Code § 18.2-53.1, and for two counts of burglary, Code § 18.2-90.  He was convicted of all offenses by a jury.  After hearing evidence on the issue of punishment, the jury fixed the punishment for the capital offense at death based upon the vileness and future dangerousness predicates, life imprisonment on each of the burglaries, and a total of 18 years imprisonment for the firearms offenses.  The trial court, after considering the sentencing report of a probation officer, sentenced Walker in accord with the jury verdicts.  Walker appealed his capital murder conviction, Record No. 990096.  We have certified Walker's appeal of his non-capital murder convictions from the Court of Appeals, Record No. 990097, and have consolidated the two appeals.

I.  Evidence

Applying familiar principles, we recite the facts in the light most favorable to the Commonwealth, the party prevailing below.  See Horton v. Commonwealth, 255 Va. 606, 609, 499 S.E.2d 258, 259 (1998).

## A.  Stanley Beale

Catherine Taylor and her children, Monique, Bianca, and Sidney, lived in the University Terrace Apartments with Stanley Beale, the children's father.  On the evening of November 22, 1996, Taylor heard "a boom like noise" in the living room.  Taylor left the bedroom where she had been with Sidney, an infant, and as she entered the living room, she saw a man kick in the locked front door.  Taylor later identified the man as Walker.  Walker was holding a gun yelling, "Where is he?"  Walker continued yelling, asking Beale "what you keep coming up to my door, what you looking for me for?"  Beale, who was standing in the doorway to the kitchen, answered that he did not know Walker and did not know where Walker lived.  Bianca, who was 13 years old at the time, shouted at Walker that her father did not know him.  Walker began shooting at Beale as Taylor ushered Bianca and Monique into the bathroom to hide in the bathtub.  Walker shot Beale three times, killing him.

Bianca testified that she knew Walker as "Todd" and subsequently identified Walker in a photo line-up as the

2

person who killed her father.  Tameria Patterson, a fourteen-year-old girl who was visiting a friend who lived in the University Terrace Apartments, testified that on the night of the murder, she saw a man she knew as "Todd" enter her friend's apartment and say "I shot him."  When shown a photo spread, Tameria identified Walker as the person who had entered the apartment.

## B.  Clarence Threat

On the night of June 18, 1997, Andrea Noble and Clarence Threat were sleeping in their bedroom when they were awakened by a "pop" coming from the screen door, followed by a knock at the door.  Noble went to the door and looked outside through a small window in the door, but did not see anyone.  On two subsequent occasions she again heard a knock and went to the door, but did not see anyone.  Sometime after the third knock, the door was "kicked open."  Noble went to the living room and saw a person she knew as "Paul" standing with a gun.  "Paul" pointed the gun at Noble as she backed into the bedroom.  When they reached the bedroom, "Paul" hit Noble with the back of the gun and then shot Threat in the leg.  In the bedroom, "Paul" and Threat exchanged words and "Paul" shot Threat again.  Threat sustained a total of seven gunshot wounds.  He died as a result of a gunshot wound to the chest.  The shooter told Noble that if she told anyone "he would come back and

3

kill [her] and [her] kids."  At trial, Noble identified Walker as the person she knew as "Paul."

<h2 style="text-align:center">II.  Constitutionality of Virginia's<br>Death Penalty Statutes</h2>

In his first assignment of error, Walker asserts that Virginia's death penalty statutes, Code §§ 19.2-264.2 to -264.5, and 17.1-313, are unconstitutional.  Specifically, he argues that the aggravating factors which the jury must consider to impose the death penalty are unconstitutionally vague, and that the failure to provide jury instructions regarding the meaning of those terms or to properly inform and instruct the jury on the consideration of mitigation evidence violates the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 11 of Article I of the Virginia Constitution.  We have previously considered and rejected these contentions, and Walker presents no basis for altering our prior decisions.  See M. Smith v. Commonwealth, 219 Va. 455, 476-77, 248 S.E.2d 135, 148 (1978), cert. denied, 441 U.S. 967 (1979)(rejecting contention that "vileness" and "future dangerousness" predicates for imposition of the death penalty unconstitutionally fail to guide the jury's discretion); Watkins v. Commonwealth, 229 Va. 469, 490-91, 331 S.E.2d 422, 438 (1985), cert. denied, 475 U.S. 1099

4

(1986)(Constitution requires only that jury be instructed to consider mitigating evidence.)

Walker also asserts that the death penalty statutes are unconstitutional because they do not require the trial court to set aside a sentence of death upon a showing of good cause, they allow the trial court to consider hearsay evidence in the post-hearing sentence report, and the review conducted by this Court is inconsistent with the requirements of the Eighth Amendment.  These assertions have previously been rejected in Breard v. Commonwealth, 248 Va. 68, 76, 445 S.E.2d 670, 675, cert. denied, 513 U.S. 971 (1994); O'Dell v. Commonwealth, 234 Va. 672, 701-02, 364 S.E.2d 491, 507-08, cert. denied, 488 U.S. 871 (1988); R. Smith v. Commonwealth, 239 Va. 243, 253, 389 S.E.2d 871, 876, cert. denied, 498 U.S. 881 (1990), respectively, and Walker fails to advance any reason to depart from these decisions.

### III.  Request for a Bill of Particulars

Walker next assigns error to the trial court's denial of his request for a bill of particulars.  He contends that the information he requested was necessary to ensure his Sixth Amendment right to effective assistance of counsel, and that the lack of such information undermines the "greater degree of reliability" that due process requires in death penalty cases.

In his request for a bill of particulars, Walker sought

5

identification of the grounds for the capital murder charge and the evidence upon which the Commonwealth would rely to prove the charge. He further requested the Commonwealth to identify and provide a "narrowing construction" of the aggravating factors upon which it intended to rely in seeking the death penalty as well as the evidence it intended to use in support of the aggravating factors.

The Commonwealth responded to Walker's request by reciting the grounds upon which it believed Walker was guilty of capital murder. The Commonwealth further stated that, if Walker was convicted of capital murder, it would seek the death penalty based on the aggravating factors of "vileness" and "future dangerousness." The Commonwealth stated that, to prove "vileness," it would rely on the depravity of mind and aggravated battery components provided in Code § 19.2-264(C). Finally, the Commonwealth informed Walker that in proving "future dangerousness," it would rely on Walker's adult and juvenile criminal record, the circumstances of the commission of the current offenses, Walker's lack of remorse, and evidence of other crimes whether adjudicated or unadjudicated.

The information requested by Walker is virtually identical to that requested by the defendant in Strickler v. Commonwealth, 241 Va. 482, 404 S.E.2d 227, cert. denied, 502 U.S. 944 (1991). In Strickler, we held that where the

6

indictment is sufficient, i.e., gives the accused "notice of the nature and character of the offense charged so he can make his defense," a bill of particulars is not required.  Id. at 490, 404 S.E.2d at 233 (quoting Wilder v. Commonwealth, 217 Va. 145, 147, 225 S.E.2d 411, 413 (1976)).

Here, there is no challenge to the sufficiency of the indictment.  As in Strickler, those parts of Walker's request for a bill of particulars seeking disclosure of the evidence upon which the Commonwealth intended to rely in the guilt and sentencing phases of the trial "are sweeping demands for pretrial disclosure of all the Commonwealth's evidence."  241 Va. at 490, 404 S.E.2d at 233.

However, "[t]here is no general constitutional right to discovery in a criminal case, even where a capital offense is charged."  Id. at 490-91, 404 S.E.2d at 233.  Walker, like the defendant in Strickler, received all the information to which he was entitled.  Furthermore, whether to require the Commonwealth to file a bill of particulars is a matter that falls within the sound discretion of the trial court, Goins v. Commonwealth, 251 Va. 442, 454, 470 S.E.2d 114, 123, cert. denied, 519 U.S. 887 (1996), and Walker has not demonstrated an abuse of that discretion.

Accordingly, we conclude that the trial court did not err in denying Walker's request for a bill of particulars in this case.

### IV. Motion for Discovery and Inspection

Walker assigns error to the trial court's denial of his motion for discovery and inspection. He admits that the Commonwealth provided him with all discovery and inspection to which he was entitled under state statutes and Rules of Court, and he does not assert that the Commonwealth improperly withheld any exculpatory information. Instead, Walker argues that the trial court erroneously refused to extend the Commonwealth's duty to disclose exculpatory evidence imposed by Brady v. Maryland, 373 U.S. 83 (1963), and to require the Commonwealth to disclose "all evidence, information and all other materials which the Commonwealth intended to offer to establish the guilt of the appellant . . . ." Walker argues that such extension is required to ensure the defendant's right to effective assistance of counsel and to meet the due process requirement of reliability in the determination that the death penalty is the appropriate punishment. We disagree.

Neither the holding in Brady nor principles of due process impose any requirement on the Commonwealth to provide the information sought by Walker beyond that which is exculpatory. United States v. Agurs, 427 U.S. 97, 109 (1976);

see Spencer v. Commonwealth, 238 Va. 295, 303, 384 S.E.2d 785, 791 (1989), cert. denied, 493 U.S. 1093 (1990). We do not find anything in Walker's arguments to warrant the extension of the holding in Brady he suggests. Because the Commonwealth provided Walker all the discovery to which he was entitled, we find no error in the denial of his motion for discovery and inspection.

## V.  Additional Peremptory Challenges

Walker asserts that a defendant is entitled to additional peremptory challenges to "ensure rights guaranteed by the Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States," and suggests that because a number of states and federal courts have allowed additional peremptory strikes the trial court erred in denying his request for additional strikes.

However, a criminal defendant has no constitutional right to peremptory challenges. Mu'Min v. Virginia, 500 U.S. 415, 424-25 (1991). And, as we have said on numerous previous occasions, there is no provision in Virginia law for granting such additional peremptory strikes. Strickler, 241 Va. at 489, 404 S.E.2d at 232; Spencer v. Commonwealth, 240 Va. 78, 84-85, 393 S.E.2d 609, 613, cert. denied, 498 U.S. 908 (1990); see Code § 19.2-262. Walker has presented no reason for us to alter our previous rulings.

## VI. Evidence of Unadjudicated Criminal Behavior

On August 10, 17, and 18, 1998, pursuant to Code § 19.2-265.3:2, the Commonwealth filed notices of its intent to present evidence of unadjudicated criminal conduct of the defendant at the sentencing phase of the trial. Walker asserts that admission of this evidence was error on three primary grounds: (1) without a positive connection of the evidence to the defendant by some standard of proof, the evidence does not meet the test of relevancy; (2) due process requires proof of unadjudicated prior criminal acts beyond a reasonable doubt when such conduct is relied upon to expose the defendant to greater or additional punishment; and (3) the use of unadjudicated criminal acts evidence denies the defendant his due process rights to notice and a meaningful opportunity to be heard on evidence used against him which also results in denial of the defendant's Sixth Amendment right to effective assistance of counsel. We reject all three of these arguments for the reasons discussed below.

First, we have previously held that evidence of prior violent criminal conduct, whether or not adjudicated, is relevant to the determination of a defendant's future dangerousness because it has a tendency to show that the accused would commit criminal acts of violence in the future. Pruett v. Commonwealth, 232 Va. 266, 284-85, 351 S.E.2d 1, 11-

10

12 (1986), cert. denied, 482 U.S. 931 (1987). Whether the evidence produced establishes the ultimate fact at issue must, of course, be tested by some standard of proof. Here, the ultimate issue of fact was Walker's "future dangerousness," which the Commonwealth was required to prove beyond a reasonable doubt. Walker cites no authority for the proposition that each piece of evidence offered to prove the ultimate issue of fact must itself also be tested by some standard of proof. Rather, that evidence is tested by the credibility or weight the fact finder chooses to give it. See Gray v. Commonwealth, 233 Va. 313, 346-47, 356 S.E.2d 157, 175-76, cert. denied, 484 U.S. 873 (1987). Therefore, we reject Walker's assertion that the evidence of unadjudicated criminal acts did not meet the test of relevancy because that evidence was not established by any standard of proof.

Next Walker relies on and quotes from McMillan v. Pennsylvania, 477 U.S. 79 (1986), for the proposition that evidence of unadjudicated criminal conduct is subject to the reasonable doubt standard of evidence in the sentencing phase of a capital murder trial because it "expose[s]" the defendant to greater punishment and presents a "radically different situation from the usual sentencing procedures."

The Supreme Court in McMillan considered whether due process was offended by a statute which raised the minimum

11

sentence if the trial court in the sentencing phase found that a defendant had "visibly possessed a firearm" in the commission of the charged offense. The trial court's finding did not have to be beyond a reasonable doubt. The defendant in that case argued that the evidentiary standard of beyond a reasonable doubt was required because visible possession of a firearm was, in effect, an element of the offense. He argued further that even if it was not an element of the offense, due process required application of the reasonable doubt standard because a finding of visible possession subjected the defendant to a greater penalty. The Supreme Court disagreed, concluding that visible possession of a firearm was not an element of the offense charged, and that the trial court's finding did not subject the defendant to a greater penalty but only raised the minimum sentence. Id. at 95.

In the course of its discussion, the Court observed that, had the trial court's finding of visible possession of a firearm exposed the defendant to "greater or additional punishment," the argument that the finding was an element of the crime subject to the reasonable doubt standard of proof "would have at least more superficial appeal." Id. at 88. The Court also observed that if the sentencing proceeding was "radically different," the reasonable doubt standard may be applied to post-trial findings. Id. at 89.

12

Contrary to Walker's assertion, these comments do not impose a due process requirement that the Commonwealth prove beyond a reasonable doubt that the defendant engaged in the unadjudicated criminal conduct offered as evidence in the sentencing phase of a capital murder trial. These comments merely suggest that such a burden of proof may be required for a factual finding that exposes the defendant to greater punishment when such finding is made in a sentencing proceeding that is "radically different" from the normal sentencing proceeding. Even if this suggestion were the rule, the Virginia death penalty sentencing statute satisfies that rule. The "finding" that exposes the defendant to the death penalty is that of future dangerousness, or alternatively, vileness, which by statute must be supported by proof beyond a reasonable doubt. See Code § 19.2-264.4(C). Furthermore, in McMillan, the Supreme Court specifically cited its holding in Patterson v. New York, 432 U.S. 197, 214 (1977), for the proposition that the state need not prove beyond a reasonable doubt every fact it recognizes as a circumstance affecting the severity of punishment. McMillan, 477 U.S. at 84. Therefore, we reject Walker's assertion that due process requires that evidence of unadjudicated criminal conduct admitted to show the defendant's future dangerousness is subject to the reasonable doubt standard.

13

Finally, Walker asserts that the use of the unadjudicated criminal conduct evidence denies him a meaningful opportunity to be heard on the evidence used against him, thus denying him effective assistance of counsel.  Walker had notice of the evidence the Commonwealth intended to introduce and the opportunity to cross-examine the witnesses offering this evidence.  He does not claim such notice was inadequate nor does he contend that his counsel's performance was inadequate.

Rather Walker argues, on a more general level, that "counsel defending against prior unadjudicated criminal conduct [evidence] is beyond the resources and realm of effective representation in defending a single capital crime." By this argument Walker seeks to raise a Sixth Amendment claim without inquiry into counsel's actual performance at trial. Whether or not such a claim might be sufficient in limited circumstances, it cannot prevail in this case.

The United States Supreme Court has found constitutional error without inquiring into counsel's actual performance only when surrounding circumstances justify a presumption of ineffectiveness.  United States v. Cronic, 466 U.S. 648, 662 (1984).  For example, where counsel was totally absent, was prevented from assisting the accused during a critical stage of the proceeding, or was prevented from exercising independent judgment in the manner of conducting the defense,

14

the Supreme Court has presumed that counsel was ineffective and that the defendant was thus prejudiced.  See id. at 659 n. 25; Geders v. United States, 425 U.S. 80 (1976)(attorney barred by law from consulting with client during overnight recess); Herring v. New York, 422 U.S. 853 (1975)(attorney barred by law from giving summation at bench trial); Brooks v. Tennessee, 406 U.S. 605 (1972)(requirement that defendant be first defense witness); Powell v. Alabama, 287 U.S. 45 (1932)(counsel for defendant charged with capital offense appointed on day of trial).

The admission of evidence of unadjudicated criminal conduct, unlike the cases cited above, does not present circumstances justifying a presumption of ineffective assistance of counsel.  After having obtained a guilty verdict, the Commonwealth was burdened by statute with the responsibility of proving beyond a reasonable doubt either future dangerousness or vileness before the death penalty could be imposed.  As discussed above, the unadjudicated criminal conduct was relevant to Walker's future dangerousness, Walker had notice that such evidence would be used, and he had the opportunity to cross-examine the witnesses through whom the Commonwealth offered this evidence.

Accordingly, we find that admission of this evidence did not violate Walker's due process or Sixth Amendment rights to

15

effective assistance of counsel and a meaningful opportunity to defend himself.

### VII.  Admission of Evidence of Cartridge

During the guilt phase, Detective Curtis R. Mullins testified that he received a cartridge from Steve Martin, who was the property manager of the University Terrace Apartments where the Beale murder occurred.  Walker lived in an apartment there with Karen Beech until some time after Beale's death.  Martin found the cartridge in the apartment following Walker and Beech's departure and prior to the arrival of a new tenant.  A certificate of analysis introduced at trial indicated that the cartridge came from the same firearm as seven cartridge cases recovered at the scene of the Beale murder.

At trial, Walker sought to exclude evidence regarding the cartridge on the basis that it was found three to four months after the murder.  Walker argues on appeal that the trial court erred in admitting Martin's testimony and the certificate of analysis into evidence because it was "neither relevant nor material, and its prejudicial effect far outweighed any possible probative value it may have had."  Walker bases his relevancy argument on his view that the trial court stated from the bench that the cartridge was not relevant.  He concludes, therefore, that the trial court

abused its discretion in admitting the cartridge into evidence.

Viewed in context, however, the trial court's statement reveals that what it found "irrelevant" was the effect of the time gap between the murder and Martin's discovery of the cartridge on the admissibility of the evidence concerning the cartridge. Every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is factually relevant and admissible. Epperly v. Commonwealth, 224 Va. 214, 230, 294 S.E.2d 882, 891 (1982). The fact that a cartridge matching those in the Beale murder was found in an apartment once occupied by the defendant tends to implicate the defendant in that murder and is thus relevant. As the trial court indicated, the four-month time period between the murder and discovery of the cartridge may affect the weight to be attached to the evidence, but it does not render the cartridge irrelevant and thus inadmissible.

Evidence that is factually relevant must nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. See Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986). The responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court and will not be disturbed on appeal in the absence of a clear

17

abuse.  Spencer, 240 Va. at 90, 393 S.E.2d at 617.  Walker does not identify any prejudice that arose from the admission of the cartridge other than its tendency to show that Walker killed Beale.  Accordingly, we find that the trial court did not err by admitting evidence related to the cartridge into evidence.

### VIII.  Admission of Photographs

During both the guilt and sentencing phases of the proceeding, the Commonwealth introduced photographs of the crime scenes and autopsy photographs of Threat.  Walker asserts that the photographs were "a calculated attempt to arouse the jurors's sympathies" and that because they were not "substantially necessary" to the Commonwealth's case, the trial court erred in admitting them into evidence.  We disagree.

Admission of photographs is within the discretion of the trial court.  Walton v. Commonwealth, 256 Va. 85, 91, 501 S.E.2d 134, 138 (1998).  Photographs of crime scenes are admissible to show motive, intent, method, malice, premeditation, and atrociousness of the crime.  Id. at 92, 501 S.E.2d at 138.  Photographs which accurately depict the crime scene are not rendered inadmissible simply because they are gruesome or shocking.  Id.  There is no assertion that the

18

photographs here were not accurate representations of the murder scenes.

The Commonwealth offered the crime scene photographs to show the positioning of Beale's body and other incidents of his murder and to show where items of evidence were found at the Threat murder scene. Such photographs are relevant and probative evidence for the jury to consider. Clagett v. Commonwealth, 252 Va. 79, 87, 472 S.E.2d 263, 268 (1996), cert. denied, 519 U.S. 1122 (1997); Goins, 251 Va. at 459, 470 S.E.2d at 126.

The autopsy photographs, introduced at the penalty phase of the proceeding, showed the "stippling" near Threat's wounds, indicating the close range at which Walker shot Threat, and were relevant on the issue of whether Walker's conduct was outrageously vile. Washington v. Commonwealth, 228 Va. 535, 551, 323 S.E.2d 577, 588 (1984), cert. denied, 471 U.S. 1111 (1985).

As discussed above, evidence that is logically relevant must be excluded if its probative value is substantially outweighed by its prejudicial effect. Coe, 231 Va. at 87, 340 S.E.2d at 823. This balancing is left to the sound discretion of the trial court and will not be disturbed on appeal absent clear abuse of discretion. Id. We have examined the

photographs and conclude that the trial court did not abuse its discretion in admitting them into evidence.

## IX.  Toxicologist Evidence

Walker assigns error to the trial court's refusal to admit into evidence the testimony and reports of a toxicologist who found the presence of drugs in the systems of both victims.  Walker asserts that this evidence was relevant because it "would be circumstantial evidence . . . of a possible alternative motive for the killing by someone else." We disagree.

Only evidence which bears upon and is pertinent to matters in issue is relevant and should be admitted.  Coe, 231 Va. at 87, 340 S.E.2d at 823.  Evidence of collateral facts and facts incapable of supporting an inference on the issue are irrelevant and cannot be accepted into evidence.  Id. There is nothing in this record which supports Walker's theory that the murders were drug-related, and evidence of the presence of drugs in the victims' systems simply does not support the inference that someone other than Walker committed the crimes.  Accordingly, the trial court did not abuse its discretion in refusing to admit this evidence.

## X.  Testimony of Prison Conditions

During the penalty phase of the proceeding, Walker sought to introduce the testimony of Gary Bass, Chief of Operations

for the Virginia Department of Corrections, regarding the conditions of prison life, specifically life without parole in a maximum security prison. Walker asserts that this evidence was relevant and properly admissible because it would mitigate against his receiving the death penalty, and therefore, the trial court erred in refusing to admit it. However, we have previously held that such testimony is not proper mitigating evidence. Cherrix v. Commonwealth, 257 Va. 292, 309-10, 513 S.E.2d 642, ___ (1999).

### XI. Sufficiency of the Evidence

#### A. Guilt Phase

Walker asserts that the trial court should have sustained his motion to strike the Commonwealth's evidence made at the close of the Commonwealth's case-in-chief because the evidence was insufficient as a matter of law to convict Walker of the offenses charged. Walker argues that the "sole" evidence against him is the testimony of the eyewitnesses and that this testimony is "inherently incredible." With regard to the Beale murder, Walker argues that the ages of Bianca and Tameria, thirteen and fourteen respectively, made their testimony "suspect." Walker asserts that their credibility is further undermined by the testimony of Christopher Miller, a witness for the Commonwealth, who stated that the person he saw with a gun at the apartment complex on the night of the

murder was not bald, in contradiction to the fact that Taylor had described the shooter as being bald. With regard to the murder of Threat, Walker claims that Noble's testimony should be discounted because she told the investigating officer both that she did not know the shooters and that one shooter was named "Paul." Walker asserts that this inconsistency renders Noble's testimony inherently incredible.

Walker's argument is based entirely on the issue of witness credibility. The trier of fact is the sole judge of the credibility of the witnesses, Davis v. Commonwealth, 230 Va. 201, 206, 335 S.E.2d 375, 379 (1985), unless, as a matter of law, the testimony is inherently incredible, Rogers v. Commonwealth, 183 Va. 190, 201-02, 31 S.E.2d 576, 580 (1944). The jury in this case resolved the credibility issues regarding the testimony of Bianca, Tameria, and Noble against the position advanced by Walker. The ages of Bianca and Tameria and the conflict in testimony regarding whether the person seen was bald, while issues to be weighed by the fact finder, do not support a finding that the testimony is inherently incredible. Similarly, Noble's statements to the investigating officer did not render her testimony inherently incredible. Accordingly, we will not disturb the ruling of the trial court denying Walker's motion to strike the Commonwealth's evidence.

22

B.  Evidence of Aggravating Factors

Walker asserts that the Commonwealth failed to carry the burden imposed upon it by Code § 19.2-264.4(C) to prove beyond a reasonable doubt that he would be a continuing threat to society, or that his conduct in committing the murders was outrageously vile, horrible, or inhuman, in that it involved depravity of mind or aggravated battery.

This argument is without merit.  With regard to future dangerousness, the Commonwealth introduced Walker's prior convictions for carnal knowledge, forgery, assault, and unauthorized use of a motor vehicle.  The evidence also showed that Walker regularly stole from friends and acquaintances and, in a rage, had punched a pregnant woman in the stomach.  In addition, as the trial court noted in imposing sentence in accordance with the jury's recommendation, the commission of two brutal, unprovoked murders within a six month period is a "strong indication . . . that [Walker] is prone towards violence."

With regard to vileness, the Commonwealth's evidence supports two of the alternative factors which can support a finding of vileness — aggravated battery and depravity of mind.  See Goins, 251 Va. at 468, 470 S.E.2d at 131 (proof of any one of these statutory components will support a finding of vileness).  Aggravated battery is a battery which

23

"qualitatively and quantitatively, is more culpable than the minimum necessary to accomplish an act of murder." M. Smith v. Commonwealth, 219 Va. 455, 478, 248 S.E.2d 135, 149 (1978), cert. denied, 441 U.S. 967 (1979). In this case Beale was shot three times, and any one of the shots could have been fatal. Walker shot Threat seven times. These multiple gunshots establish aggravated battery. Goins, 251 Va. at 468, 470 S.E.2d at 131.

Walker's actions established depravity of mind, that is, a "degree of moral turpitude and psychical debasement surpassing that inherent in the definition of ordinary legal malice and premeditation." M. Smith, 219 Va. at 478, 248 S.E.2d at 149. Walker shot his victims in front of their loved ones and family members, after having forcibly invaded the sanctity of their homes. The evidence showed that the killings were unprovoked, premeditated, and methodical. Walker showed no mercy toward his victims or their loved ones.

Based on this evidence, we conclude that the Commonwealth proved beyond a reasonable doubt that Walker would be a continuing serious threat to society and that his conduct in committing the murders was vile. Accordingly, the trial court did not err in refusing to strike the Commonwealth's evidence of the aggravating factors.

## XII. Statutory Review

24

Code § 17.1-313(C) requires this Court to consider whether the sentence of death was imposed "under the influence of passion, prejudice or any other arbitrary factor," and whether such sentence is excessive or disproportionate to penalties imposed in similar cases, "considering both the crime and the defendant."  Walker presents no arguments asserting that his sentence resulted from passion or prejudice, but relies on our statutorily mandated review of this issue.

Our review of the record reveals nothing to suggest that the sentence of death resulted from passion, prejudice or arbitrariness.  As we have said, the record supports the findings of guilt and of the aggravating factors, and there is nothing to suggest that Walker's sentence of death was imposed because of any arbitrary factor.

Walker also relies on the review we must undertake to determine whether the sentence imposed in this case is excessive or disproportionate to other sentences imposed by sentencing bodies in this Commonwealth for similar crimes. This is the first case we have considered in which the death penalty had been imposed for the willful, deliberate, and premeditated killing of more than one person within a three-

25

year period.  Code § 18.2-31(8).[*]  The General Assembly

classified this conduct as capital murder in 1996.  Acts 1996,

ch. 959.  However, the lack of directly comparable crimes does

not prevent our consideration of whether the sentence imposed

in this case was disproportionate under the review mandated by

Code § 17.1-313(C)(2).  If it did, as we observed in Stewart

v. Commonwealth, 245 Va. 222, 248, 427 S.E.2d 394, 410, cert.

denied, 510 U.S. 848 (1993), then "a death sentence could

never be imposed where there are no previous cases similar to

the one at bar."

After reviewing the incidents of this crime and the

circumstances of this defendant, we conclude that the sentence

of death was not disproportionate to other sentences imposed

in this Commonwealth for similar crimes.  There are a number

of incidents of this capital murder which are comparable to

the facts surrounding other cases in which the death penalty

has been imposed.

First, Walker invaded the homes of both of his victims

and shot them in front of family members or a loved one.

Juries have imposed the death penalty for the murder of

victims in their homes and in the presence of another family

---

[*] The defendant in Walton v. Commonwealth, 256 Va. 85, 501 S.E.2d 134 (1998), was convicted of four charges of capital murder.  One of those convictions was pursuant to Code § 18.2-

member.  See Goins, 251 Va. 442, 470 S.E.2d 114; Burket v.

Commonwealth, 248 Va. 596, 450 S.E.2d 124 (1994), cert.

denied, 514 U.S. 1053 (1995); Stewart v. Commonwealth, 245 Va.

222, 427 S.E.2d 394; Davidson v. Commonwealth, 244 Va. 129,

419 S.E.2d 656, cert. denied, 506 U.S. 959 (1992).

Second, as with Stewart, Goins and Burket above, the jury

in this case found upon sufficient evidence that Walker's

conduct in committing these murders was outrageously or

wantonly vile, and that Walker posed a continuing serious

threat to society.

Third, the jury found upon sufficient evidence that

Walker committed the willful, deliberate, premeditated killing

of multiple persons.  Juries have in the past, based on the

predicate of future dangerousness and vileness, imposed the

death sentence upon perpetrators of multiple homicides within

a brief time period under Code § 18.2-31(7), which makes it a

capital crime to murder more than one person in the same

transaction.  See Goins, 251 Va. 442, 470 S.E.2d 114; Burket,

248 Va. 596, 450 S.E.2d 124; Stewart, 245 Va. 222, 427 S.E.2d

394.

In the instant case, the separation of time between the

murders arguably evidences an even greater disregard for human

---

31(8); however, the trial court dismissed the charge after
sentencing on the other three convictions.

27

life.  The second murder in this case did not occur because that victim was located proximately to the first, as in some single transaction murders.  Here, Walker engaged in distinct complete acts of willful, deliberate, and premeditated murder.  The serial nature of his criminal conduct is no less egregious because it was not performed as part of a single transaction.

Finally, the evidence Walker offered in mitigation during the sentencing phase, when compared to the evidence of his prior history and circumstances of this crime, does not distinguish him from defendants who have been sentenced to death in past cases.

Based upon this review, we find that the sentence of death in this case is neither excessive nor disproportionate to sentences imposed by sentencing bodies in this Commonwealth for similar crimes.  Consequently, we hold that the trial court committed no reversible error and, based on our independent review of the record, conclude that the sentence of death was properly imposed.  Thus, we will affirm the trial court's judgment concerning Walker's conviction and sentence for capital murder.  We will also affirm the trial court's judgment concerning Walker's convictions and sentences for burglary and use of a firearm.

Record No. 990096 — Affirmed.
Record No. 990097 — Affirmed.

28