COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Lemons and Frank
Argued at Norfolk, Virginia


ELMER K. FLOYD
                                            OPINION BY
v.    Record No. 2427-98-1           JUDGE DONALD W. LEMONS
                                          DECEMBER 21, 1999
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                   William C. Andrews, III, Judge

           Charles E. Haden for appellant.

           Jeffrey S. Shapiro, Assistant Attorney
           General (Mark L. Earley, Attorney General, on
           brief), for appellee.


     Elmer K. Floyd was convicted in a bench trial of robbery of

Annette Keats in violation of Code § 18.2-58, abducting Annette

Keats for pecuniary benefit in violation of Code § 18.2-48, and

maliciously causing bodily injury to Annette Keats with a

caustic substance in violation of Code § 18.2-52.  On appeal,

Floyd challenges the sufficiency of the evidence for each of his

convictions.  Finding no error, we affirm the convictions.

                      I.   BACKGROUND

     Where the sufficiency of the evidence is an issue on

appeal, an appellate court must view the evidence and all

reasonable inferences fairly deducible therefrom in the light

most favorable to the Commonwealth.  See Cheng v. Commonwealth,

240 Va. 26, 42, 393 S.E.2d 599, 608 (1990) (citations omitted).

Unless the verdict is plainly wrong, or without evidence to support it, it shall not be disturbed on appeal.  <u>See</u> Code § 8.01-680; <u>George v. Commonwealth</u>, 242 Va. 264, 278, 411 S.E.2d 12, 20 (1991).

On the morning of February 7, 1997, Annette Keats, manager of Atlantic Self-Storage, opened the store for business. Shortly after 9:00 a.m. that morning, two men entered the store. One man, later identified as Kyle King, approached Keats, who was sitting at her desk behind the counter, and asked about renting a storage unit.  King was described as heavy set and wearing a black skull cap.  The other man, Floyd, was described as shorter and thinner than King and wore a black bandana tied around his head.  While King discussed renting a storage unit with Keats, Floyd paced by the entrance in a hunched posture while looking out the window and door of the store.

During her conversation with King, Keats came around her desk and went to the counter to look at the vacant space listing.  While Keats examined the listing, one of the two men sprayed her with a substance that smelled like pepper.  The substance burned and stung Keats' eyes and both sides of her face, and Keats could no longer see.  She was then hit in the head and knocked to the floor.  One of the men continued to spray her in the face while kicking her in the back.  He put his foot on Keats' face and pushed her head into the floor.

-

Meanwhile, Keats heard the other man rifling through the cash drawer. Specifically, Keats heard the money tray being picked up and put down and change being "ruffled." One of the men then bound Keats' hands together with duct tape. Both men fled the store. When Keats got up, she found the cash drawer empty and immediately called the police.

Keats was hospitalized for several hours while her eyes were washed out with saline solution. She was also treated for several contusions and abrasions on her back and a "bump" on her head.

On February 12, 1997, Keats examined a photo spread and identified the appellant, Elmer K. Floyd, and another individual (not King). She said that only one of the two men she identified attacked and robbed her but refused to identify which one because she was "afraid of being hurt." On February 21, 1997, Keats examined another photo spread and identified the photo of Kyle King as one of the perpetrators.

King and Floyd were both indicted for robbery, abduction and maliciously causing bodily injury with a caustic substance and were tried jointly in a bench trial. At trial, Keats positively identified King and Floyd as the perpetrators of these crimes. Floyd's fingerprints were found on the outside of the money tray that was inside the cash register at Atlantic Self-Storage on February 7, 1997.

Both defendants denied any involvement in the crimes. Floyd testified that his fingerprints were present on the money tray because he had taken $50 from the drawer on January 20, 1997 when he, his brother, a friend and Cheraine Middleton went to Atlantic Self-Storage to store various items belonging to Middleton. According to appellant, his fingerprints were present because of that prior larceny and not because of the robbery of February 7. Keats denied having seen Floyd present on that occasion and did not know of any shortage in her register on January 20. The evidence also showed that, contrary to the description given by Keats, Floyd is about six or seven inches taller than King and somewhat thinner.

## II. <u>SUFFICIENCY OF THE EVIDENCE - IDENTIFICATION</u>

Floyd contends the evidence in this case is entirely circumstantial and, therefore, insufficient to convict him because the Commonwealth failed to exclude every reasonable hypothesis of innocence. See <u>Cameron v. Commonwealth</u>, 211 Va. 108, 110, 175 S.E.2d 275, 276 (1970). Floyd mischaracterizes the Commonwealth's evidence.

Direct evidence is evidence that, if believed, resolves a matter in issue. Conversely, circumstantial evidence, even if accepted as true, requires additional reasoning to accept the proposition to which the evidence is directed. See <u>McCormick On Evidence</u> § 185 at 339 (4th ed. 1992). When a conviction is based entirely on circumstantial evidence,

-

all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and must exclude every reasonable hypothesis of innocence. . . .  The circumstances of motive, time, place, means, and conduct must all concur to form an unbroken chain which links the defendant to the crime beyond a reasonable doubt.

Bishop v. Commonwealth, 227 Va. 164, 169, 313 S.E.2d 390, 393 (1984).

Floyd argues that "[t]he Commonwealth's entire case was built on the circumstantial evidence, namely, that [his] fingerprint had been found on the cash tray."  Floyd ignores the direct evidence offered by the Commonwealth.  The victim testified that she was alone in the store and two men came in immediately after she opened for business.  She identified Floyd as one of the perpetrators in a pretrial photo spread and in her testimony at trial.

Because the victim was temporarily blinded, she did not see who taped her wrists together, and she did not see anyone take money from the cash drawer.  She did, however, hear the cash drawer being lifted up and down.  She heard the "ruffle" of change.  Floyd's fingerprints were found on the cash tray.  The money was missing after the men left.

Floyd does not maintain that the money was not taken or that the victim was not sprayed or that the victim's wrists were not bound by duct tape.  Furthermore, he does not contend that a third perpetrator was involved.  He maintains that he did not

-

commit the offenses.  With only two persons present, one of them
identified as Floyd, the evidence supports his conviction of
robbery, abduction and malicious wounding as either a principal
in the first or second degree.  The in-court identification of
Floyd as one of the two perpetrators is sufficient direct
evidence to establish his identity.  Upon a review of the
record, we cannot say the trial judge was plainly wrong or
without evidence to support the finding that Floyd was one of
the perpetrators of these crimes.

III.  SUFFICIENCY OF THE EVIDENCE - "CAUSTIC SUBSTANCE"

Code § 18.2-52 provides, in pertinent part, as follows:
"[i]f any person maliciously causes any other person bodily
injury by means of any acid, lye or other caustic substance or
agent or use of any explosive or fire, he shall be guilty of a
felony . . . ."  At trial, Floyd did not contend that "bodily
injury" did not occur; rather, he argued that the Commonwealth
failed to prove that a "caustic substance" was utilized.  The
term "caustic" is not defined by the legislature.  "Generally,
the words and phrases used in a statute should be given their
ordinary and usually accepted meaning unless a different
intention is fairly manifest."  Woolfolk v. Commonwealth, 18 Va.
App. 840, 847, 447 S.E.2d 530, 533 (1994) (citation omitted).[1]

---

[1] "[T]he word caustic is of Latin and Greek derivation, the
original words meaning 'to burn.'"  People v. Hicks, 462 N.E.2d
473, 475 (Ill. 1984) (holding that boiling water is a "caustic

-

Among several definitions of "caustic" are "very irritant" and "burning." Blakiston's Gould Medical Dictionary 238 (4th ed. 1979). We accept these definitions as the "common and ordinary meanings" of the word "caustic."

The court found that Keats was sprayed with a substance that "smelled like pepper." The substance immediately disabled her, caused her skin and eyes to burn, temporarily blinded her and required medical personnel to spend several hours rinsing her eyes with saline solution to provide relief. The substance was not recovered, tested or introduced into evidence. Nonetheless, the nature of a substance can be proved by proof of the circumstances and effects of its use. See Hill v. Commonwealth, 8 Va. App. 60, 379 S.E.2d 134 (1989). Based on the description given by Keats as to how the spray affected her and the circumstances of its use, the trial court was not plainly wrong or without evidence to support its determination that the spray was a "caustic substance" as contemplated by Code § 18.2-52.[2]

---

substance" within the meaning of Illinois' heinous battery statute).

[2] Whether the use of pepper spray under these circumstances is a violation of Code § 18.2-312 is not before us. However, "'[w]here the circumstances surrounding an offense permit prosecution under either of two statutes, the selection of the statute under which to proceed is a matter of prosecutorial election.'" Brown v. Commonwealth, 30 Va. App. 243, 250, 516 S.E.2d 678, 682 (1999) (quoting Smith v. Commonwealth, 17 Va. App. 37, 41, 434 S.E.2d 914, 916 (1993)).

-

## IV.  SUFFICIENCY OF THE EVIDENCE - ABDUCTION

Additionally, Floyd claims on appeal that the evidence does not support a finding that an abduction took place.  This issue was not raised at trial, and Floyd is barred from raising it for the first time on appeal.  See Rule 5A:18.

## V.  CONCLUSION

Finding no error, we affirm the convictions.

Affirmed.