COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Clements and Senior Judge Fitzpatrick
Argued at Richmond, Virginia


ERIC FITZGERALD JONES

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0412-06-4                      JUDGE JEAN HARRISON CLEMENTS
                                                    JULY 17, 2007
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                        Richard J. Jamborsky, Judge Designate

                Dennis M. Mersberger (Schmergel & Mersberger, PLC, on briefs),
                for appellant.

                Rosemary V. Bourne, Assistant Attorney General (Robert F.
                McDonnell, Attorney General, on brief), for appellee.


        Eric Fitzgerald Jones (appellant) was convicted in a jury trial of second-degree murder, in

violation of Code § 18.2-32, and use of a firearm in the commission of murder, in violation of

Code § 18.2-53.1.  On appeal, he contends the trial court erred in (1) finding the evidence

sufficient, as a matter of law, to support his convictions; (2) allowing an expert in the field of

firearms and tool mark identification to give an opinion regarding the probable distance a shell

casing would be ejected by a Smith & Wesson nine-millimeter pistol; and (3) allowing the expert

witness to use a Smith & Wesson nine-millimeter pistol as demonstrative evidence where no

weapon was recovered in the case.  For the following reasons, we affirm the trial court's

judgment and appellant's convictions.

        As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I. BACKGROUND

"Under familiar principles of appellate review, we view the evidence and all reasonable inferences fairly deducible from that evidence in the light most favorable to the Commonwealth, the party that prevailed below." Banks v. Commonwealth, 41 Va. App. 539, 543, 586 S.E.2d 876, 877 (2003). So viewed, the evidence established that, around 10:30 p.m. on March 8, 2005, Corey Hargrow was fatally shot in the back while standing outside an apartment building in the 700 block of Fayette Street in Alexandria. Hargrow, whose nickname was "C. Bear," died before he could communicate to authorities the identity of the person who shot him. The murder weapon was never recovered.

At about 10:30 p.m. that night, Tina Williams, who had known appellant for about nine months, heard a noise outside that drew her to a second-story window of the apartment she was visiting. That apartment was adjacent to a paved walkway known locally as "the cut." When she looked out the window, she saw appellant standing near the end of "the cut" by Fayette Street pointing a gun at Hargrow, who was wearing a black hoodie. As she looked out at appellant, she heard a gunshot and saw appellant lower his arm. She then observed appellant raise his arm again and fire three more gunshots at Hargrow, who had turned and was trying to get away. Williams saw Hargrow slump over and saw appellant run away after firing the shots.

Eva Duncan, who lived two doors down from "the cut," was in her second-story bedroom with her window open on the night of March 8, 2005. She had known appellant for about a year and had talked to him numerous times. Around 10:30 p.m. that night, she heard the sound of an argument. Looking out the window, she saw several people standing in the vicinity of "the cut." Duncan recognized appellant, who was shouting and holding a gun by his side while Hargrow

- 2 -

attempted to calm him. The two men were "face to face." Not thinking it was serious, Duncan returned to her bed. "A couple of minutes later," she heard about five gunshots. Returning to the window, she saw all but two of the people scattering. As she continued to watch, she saw Hargrow stumble toward the front door of the house next to "the cut" and saw appellant turn, tuck the gun into the waistband of his pants, and flee the scene.

Claudia Jenkins, who had known appellant for "a couple years," observed appellant and Hargrow arguing during the day of March 8, 2005. Later that night as she was walking home from a friend's house, she passed appellant and Hargrow on "the cut" near Fayette Street and again observed that they were arguing. After walking past them, Jenkins heard a gunshot behind her. She turned and saw appellant pointing a gun at Hargrow. She saw "fire" coming from the gun. She then heard several more shots as she fled.

Melissa Talbert, who lived three doors away from "the cut," was in her second-story bedroom on March 8, 2005, when she heard the sound of arguing through her partially open window around 10:30 p.m. Looking out the window, she saw five or six people standing near "the cut." She recognized the voices of appellant and Hargrow coming from the group. She heard appellant say in a loud voice to the person in the group wearing a hoodie, "[Y]ou are going to make me kill you." Talbert returned to bed. Three to five minutes later she heard gunshots. She returned to the window and saw someone slumped over by the front door of the house next to "the cut" and appellant running away.

On March 12, 2005, Dawit Meshesha, who had known appellant for more than three years, encountered appellant on North Henry Street. He thought appellant was "acting real nervous" and asked him what was wrong. In response, appellant said, "I just shot my man." When Meshesha asked him whom he had shot, appellant said it was someone Meshesha did not

know, a person "named Bear." When Meshesha asked him what had happened, appellant said, "He got me so heated, that I came back and shot him."

At appellant's trial, Julian J. Mason, Jr., a forensic scientist employed by the Virginia Division of Forensic Science, qualified, without objection, as an expert witness in the field of firearms and tool mark identification. He testified that all four shell casings recovered from the scene of the murder came from the same weapon, a Smith & Wesson nine-millimeter auto-loading pistol. He further testified that all three of the bullets recovered were also fired from a single firearm, a Smith & Wesson nine-millimeter auto-loading pistol.

Over appellant's objection, Mason used an unloaded Smith & Wesson nine-millimeter auto-loading pistol as a demonstrative exhibit as he described the firearm's casing-ejection process. The trial court gave a cautionary instruction to the jury that the firearm used by Mason was not the murder weapon and was being used solely to demonstrate how a Smith & Wesson nine-millimeter auto-loading pistol "works so far as ejecting casings." Mason also testified, over appellant's objection, that, if a Smith & Wesson nine-millimeter auto-loading pistol is held upright when fired, the shell casings generally eject three to five feet away from the pistol.

Testifying on his own behalf, appellant admitted having been with Hargrow, his longtime friend, immediately before the shooting. He testified that a group of men approached them near the end of "the cut" by Fayette Street and that one of the men pointed a gun at them in an apparent robbery attempt. Appellant stated that he turned and ran, hearing gunshots as he fled.

At the conclusion of the trial, the jury found appellant guilty of second-degree murder and use of a firearm in the commission of murder. Imposing the sentences fixed by the jury, the trial court sentenced appellant to ten years in prison on the murder conviction and three years in prison on the use of a firearm conviction.

This appeal followed.

## II.  SUFFICIENCY OF THE EVIDENCE

On appeal, appellant contends the evidence was insufficient, as a matter of law, to support his convictions because the testimony of the "witnesses most crucial to the government's case [was] inherently unreliable."  We disagree.

In reviewing the sufficiency of the evidence to support a conviction, "we determine whether the evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense."  Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779 (1999).  "In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom."  Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988).  We will affirm the conviction "unless it is plainly wrong or without evidence to support it."  Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 906 (2001).

We are further mindful that "[c]onflicts in the evidence are resolved by the fact finder, and such conflicts are not revisited on appeal unless 'the evidence is such that reasonable [persons], after weighing the evidence and drawing all just inferences therefrom, could reach but one conclusion.'"  Molina v. Commonwealth, 47 Va. App. 338, 369, 624 S.E.2d 83, 98 (quoting City of Bedford v. Zimmerman, 262 Va. 81, 86, 547 S.E.2d 211, 214 (2001)), aff'd, 272 Va. 666, 636 S.E.2d 470 (2006).  "Thus, if the evidence is conflicting on a material point, if reasonable persons may draw different conclusions from the evidence, or if a conclusion is dependent on the weight the fact finder gives to the testimony, a judge is not permitted to substitute his or her conclusion for that of the jury . . . ."  Jenkins v. Pyles, 269 Va. 383, 388, 611 S.E.2d 404, 407 (2005).

Moreover, "[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). Hence, "[d]etermining the credibility of witnesses who give conflicting accounts is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993). "'[W]hen two or more witnesses introduced by a party litigant vary in their statements of fact, such party has the right to ask the court or jury to accept as true the statements most favorable to [that party].'" Ravenwood Towers, Inc. v. Woodyard, 244 Va. 51, 55, 419 S.E.2d 627, 629 (1992) (quoting Massie v. Firmstone, 134 Va. 450, 462, 114 S.E. 652, 656 (1922)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). We will not disturb the fact finder's determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible." Walker v. Commonwealth, 258 Va. 54, 70-71, 515 S.E.2d 565, 575 (1999).

For testimony to be inherently incredible, as a matter of law, "it 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" Cardwell v. Commonwealth, 209 Va. 412, 414, 164 S.E.2d 699, 701 (1968) (quoting Burke v. Scott, 192 Va. 16, 23, 63 S.E.2d 740, 744 (1951)). In other words, it must be "so contrary to human experience as to render it unworthy of belief." Fisher v. Commonwealth, 228 Va. 296, 300, 321 S.E.2d 202, 204 (1984).

In this case, the identity of the perpetrator was at issue. The Commonwealth's evidence at trial included direct evidence in the form of eyewitness testimony from Williams and Jenkins. Williams testified that she saw appellant fire four gunshots at Hargrow. Jenkins also testified that she observed appellant fire a gun in Hargrow's direction and heard several more shots as she ran from the scene. Appellant admitted to having been present moments before the shooting, but testified he fled before Hargrow was fatally shot by someone else. The members of the jury, who had the opportunity to observe and evaluate these witnesses, credited Williams's and Jenkins's testimony and rejected appellant's testimony. We are bound by the jury's credibility determination unless the testimony of the Commonwealth's witnesses was inherently incredible, as a matter of law. See Walker, 258 Va. at 70-71, 515 S.E.2d at 575.

Appellant claims the inconsistencies and conflicts in Williams's testimony, her delay in reporting her observations to the police, and her status as a convicted felon rendered her testimony inherently incredible. Appellant also claims Jenkins's admission that she had been drinking and might have used drugs prior to the shooting rendered her testimony inherently incredible. We find both claims to be without merit.

> The fact that a witness makes inconsistent statements in regard to the subject matter under investigation does not render [her] testimony nugatory or unworthy of belief. It is the province of the trier of the facts—jury or judge—"to pass upon such inconsistent statements and give or withhold their assent to the truthfulness of the particular statement." It is firmly imbedded in the law of Virginia that the credibility of a witness who makes inconsistent statements on the stand is a question for the jury, or for the trial court as a trier of the facts sitting without a jury.
>
> *       *       *       *       *       *       *
>
> . . . So long as a witness deposes as to facts which, if true, are sufficient to maintain [the jury or judge's] verdict, then the fact that the witness'[s] credit is impeached by contradictory statements affects only the witness'[s] credibility; contradictory statements by a witness go not to competency but to the weight and sufficiency

of the testimony. If the trier of the facts sees fit to base the verdict upon that testimony there can be no relief in the appellate court.

Swanson v. Commonwealth, 8 Va. App. 376, 378-79, 382 S.E.2d 258, 259 (1989) (quoting

Shelton v. Mullins, 207 Va. 17, 22, 147 S.E.2d 754, 758 (1966)).

In this case, defense counsel cross-examined Williams about the purported conflicts and inconsistencies in her testimony that appellant raises on appeal. During closing argument, defense counsel highlighted those conflicts and inconsistencies in Williams's testimony for the jury. As previously mentioned, however, the jury found Williams's testimony credible, "resolving the conflicts and inconsistencies [therein] against [appellant] and finding ultimately that the evidence constituted proof of guilt beyond a reasonable doubt." Lockhart v. Commonwealth, 34 Va. App. 329, 343, 542 S.E.2d 1, 7 (2001). Finding nothing in Williams's testimony so contrary to human experience as to render it inherently incredible as a matter of law, we uphold the jury's determination that the conflicts and inconsistencies in Williams's testimony did not render it unworthy of belief. See id. at 343, 542 S.E.2d at 7-8.

Moreover, "[t]he mere fact that a witness may have delayed in reporting knowledge of a case . . . does not necessarily render the testimony unworthy of belief." Juniper v. Commonwealth, 271 Va. 362, 415, 626 S.E.2d 383, 417 (2006). Nor is testimony from a convicted felon inherently incredible. Yates v. Commonwealth, 4 Va. App. 140, 144, 355 S.E.2d 14, 16 (1987). Likewise, we are aware of no authority for the proposition that a witness's mere admission that she had been drinking and might have used drugs prior to the incident about which she testifies automatically renders that testimony inherently incredible. These circumstances are "appropriately weighed as part of the entire issue of witness credibility, which is left to the [fact finder] to determine." Juniper, 271 Va. at 415, 626 S.E.2d at 417.

Furthermore, Williams's and Jenkins's testimony was corroborated by other testimony and the physical evidence. Talbert and Duncan both offered evidence placing appellant at the

scene of the murder. Talbert also testified she heard appellant in a heated discussion shortly before the shooting, and Duncan testified she saw a gun in appellant's hand prior to the shooting and saw him tuck the gun into his waistband moments after the shooting. Meshesha testified that appellant admitted to him four days after the murder that he had gotten angry and shot his "man" "Bear." Mason, a firearms expert, opined that all four shell casings recovered from the scene of the murder came from the same nine-millimeter pistol and that all three bullets recovered were also fired from a single nine-millimeter pistol.

We conclude, therefore, that the direct eyewitness testimony of Williams and Jenkins identifying appellant as the gunman was not inherently incredible as a matter of law and was, thus, sufficient to support appellant's convictions. See Kelly v. Commonwealth, 42 Va. App. 347, 354-55, 592 S.E.2d 353, 357 (2004) ("When the Commonwealth offers direct evidence from eyewitnesses whose testimony is not inherently incredible, the jury may accept that testimony as credible and reject all conflicting evidence, thereby determining, in essence, that no reasonable hypotheses of innocence remain."); Floyd v. Commonwealth, 31 Va. App. 193, 198, 522 S.E.2d 382, 384 (1999) ("Direct evidence is evidence that, if believed [by the trier of fact], resolves a matter in issue."). Accordingly, we hold the trial court did not err in finding the evidence sufficient, as a matter of law, to support appellant's convictions.

### III. EXPERT TESTIMONY

Appellant also contends the trial court abused its discretion in allowing Mason to give an opinion regarding the probable distance a shell casing would be ejected by a Smith & Wesson nine-millimeter auto-loading pistol. In support of that contention, he argues exclusively that, because the witness's expertise was in the field of firearms and tool mark identification, he was not qualified to offer an expert opinion with regard to the ejection range of shell casings from a specific firearm. Such a matter, he argues, was "outside of his qualified field and purpose for

which he was accepted as an expert by the trial court." As the Commonwealth points out, however, appellant never raised this specific argument below.

Rule 5A:18 provides in pertinent part that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Pursuant to Rule 5A:18, we "will not consider an argument on appeal [that] was not presented to the trial court." Ohree v. Commonwealth, 25 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).

> Under this rule, a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal. A general argument or an abstract reference to the law is not sufficient to preserve an issue. Making one specific argument on an issue does not preserve a separate legal point on the same issue for review.

Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (en banc). Thus, "though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court." West Alexandria Properties, Inc. v. First Va. Mortgage & Real Estate Inv. Trust, 221 Va. 134, 138, 267 S.E.2d 149, 151 (1980). In short, we will not consider an argument on appeal that is different from the specific argument presented to the trial court, even if it relates to the same issue. See Buck v. Commonwealth, 247 Va. 449, 452-53, 443 S.E.2d 414, 416 (1994) (holding that appellant's failure to raise the same specific arguments "before the trial court precludes him from raising them for the first time on appeal"). The main purpose of this rule is to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals and reversals. Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 739 (1991) (en banc); Kaufman v. Kaufman, 12 Va. App. 1200, 1204, 409 S.E.2d 1, 3-4 (1991).

- 10 -

At trial, when Mason was asked on direct examination how far he would expect a shell casing to be ejected by a Smith & Wesson nine-millimeter auto-loading pistol, appellant's counsel stated only as follows: "Your honor I'm going to object. I would say that that is speculation as to how or what it would do, eject." No other grounds for the objection were given. It is clear, therefore, that, despite having had the opportunity to do so, appellant did not raise below, and the trial court was not given the opportunity to address, the claim appellant now raises on appeal.

Moreover, our review of the record reveals no reason to invoke the "ends of justice" or "good cause" exceptions to Rule 5A:18. See Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) ("In order to avail oneself of the [ends of justice] exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred."); M. Morgan Cherry & Assocs. v. Cherry, 38 Va. App. 693, 702, 568 S.E.2d 391, 396 (2002) (en banc) (holding that the "good cause" exception to Rule 5A:18 will not be invoked where appellant had the opportunity to raise the issue at trial but did not do so).

We hold, therefore, that appellant is barred by Rule 5A:18 from raising this claim for the first time on appeal.

## IV. DEMONSTRATIVE EVIDENCE

Appellant further contends the trial court abused its discretion in allowing Mason to use a Smith & Wesson nine-millimeter auto-loading pistol as demonstrative evidence even though no weapon was recovered in this case. We disagree.

"Admission of items of demonstrative evidence to illustrate testimonial evidence is . . . a matter within the sound discretion of a trial court." Mackall v. Commonwealth, 236 Va. 240, 254, 372 S.E.2d 759, 768 (1988).

Here, the firearm used in the instant crimes was never recovered. However, Mason, a firearms expert, testified that the bullets and shell casings recovered from the murder scene were all from a Smith & Wesson nine-millimeter auto-loading pistol. Over appellant's objection that such evidence was prejudicial, Mason used an unloaded Smith & Wesson nine-millimeter auto-loading pistol to demonstrate how a firearm of the same type used by the perpetrator ejected the spent cartridges. In offering that evidence, the Commonwealth sought to show that the location of the recovered casings and bullets was consistent with the testimony of the Commonwealth's witnesses.

The trial court gave the jury the following instruction:

> [I]n just a few minutes, we're going to see a weapon. I want to make it as clear to you as I possibly can that this is not the gun that was used in this case. The reason that the Commonwealth is doing this is to give you an example of the kind of gun that it was.
>
> The weapon in this case has never been found, so this is not that weapon. This, according to the Commonwealth, is the kind of weapon that was used. And from what I understand, the Commonwealth wants you to see how it works so far as ejecting casings.

Thus, the court explicitly advised the jury that the demonstration gun was not the actual gun used during the charged crimes and instructed the jury that the demonstration gun was being used solely to demonstrate how such a gun ejects shell casings. See LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983) ("Unless the record shows to the contrary, it is to be presumed that the jury followed an explicit cautionary instruction promptly given."). Moreover, the use of the gun could reasonably be expected to facilitate the jury's understanding of evidence not within its common experience. Under these circumstances, we cannot say the challenged demonstrative evidence was so prejudicial as to outweigh its probative value. See Jackson v. Commonwealth, 267 Va. 178, 203, 590 S.E.2d 520, 534 (2004) (finding no abuse of discretion where the trial court allowed the Commonwealth to use a pillow that was

not the actual pillow used in the charged crime to demonstrate the length of time the accused held a pillow over the victim's face, where accompanied by an explanatory instruction to the jury); Mackall, 236 Va. at 254, 372 S.E.2d at 768 (finding the trial court did not abuse its discretion when it permitted the Commonwealth's medical expert witness to demonstrate bullet trajectory with knitting needles and a Styrofoam head because the demonstration made it easier for the jury to understand the expert testimony).

We hold, therefore, that the trial court did not abuse its discretion in permitting the expert's demonstration.

## V.  CONCLUSION

For these reasons, we affirm the trial court's judgment and appellant's convictions.

Affirmed.