COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Kelsey and Haley
Argued at Richmond, Virginia


SCOTT THOMAS McNAMEE

                                                        MEMORANDUM OPINION[*] BY
v.        Record No. 1070-10-2                JUDGE ROBERT J. HUMPHREYS
                                                            FEBRUARY 1, 2011
SHARON JONES McNAMEE


                    FROM THE CIRCUIT COURT OF HENRICO COUNTY
                                Catherine C. Hammond, Judge

            Shannon S. Otto (Locke Partin DeBoer & Quinn, on briefs), for appellant.

            F. Byron Parker, Jr. (Parker & McMakin Law Group, on brief), for
            appellee.


        Scott Thomas McNamee ("husband") appeals a ruling of the Circuit Court of Henrico

County ("the circuit court") denying his motion to amend spousal support to Sharon Jones

McNamee ("wife").  On appeal, husband argues the trial court erred in 1) relying on Code

§ 20-109(A) to evaluate husband's motion to amend support; 2) denying husband's motion to

amend support; 3) concluding that husband owed spousal support arrearages to wife;

4) calculating the parties' gross incomes for purposes of determining child support and, as a

result, erred in calculating child support; and 5) taking evidence and ruling on the issue of

husband's alleged failure to pay the unreimbursed medical expenses for the parties' minor child.

For the following reasons, we affirm in part, reverse and remand in part, and reverse and vacate

in part.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  ANALYSIS

Spousal support decisions are within the broad discretion of the trial court, and this Court's "review is limited to determining whether the trial court clearly abused its discretion." Miller v. Cox, 44 Va. App. 674, 679, 607 S.E.2d 126, 128 (2005) (citing Gamble v. Gamble, 14 Va. App. 558, 574, 421 S.E.2d 635, 644 (1992)).  "We will not disturb the trial court's decision where it is based on an *ore tenus* hearing, unless it is 'plainly wrong or without evidence in the record to support it.'"  Furr v. Furr, 13 Va. App. 479, 481, 413 S.E.2d 72, 73 (1992) (quoting Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989)).  Finally, it is the trial court's duty, when sitting as the finder of fact, to resolve conflicts in the evidence.  City of Bedford v. Zimmerman, 262 Va. 81, 86, 547 S.E.2d 211, 214 (2001).

A.  Issues Procedurally Defaulted

Husband's contentions that the trial court erred in relying on Code § 20-109(A) to evaluate husband's motion to amend support and in calculating the parties' gross incomes for purposes of determining child support and, as a result, erred in calculating child support, were not timely objected to with the grounds stated at a point in time when the circuit court could properly act upon husband's contentions.[1]  Scialdone v. Commonwealth, 279 Va. 422, 437, 689 S.E.2d 716, 724 (2010) ("To satisfy [Rule 5A:18], 'an objection must be made . . . at a point in the proceeding when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error.'" (quoting Johnson v. Raviotta, 264 Va. 27, 33, 563 S.E.2d 727, 731 (2002))).  Thus, pursuant to Rule 5A:18, we do not consider the merits of either

---

[1] Effective July 1, 2010, Rule 5A:18 was revised to state that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ."  Because the proceedings below were completed prior to this revision taking effect, we will rely on the language of Rule 5A:18 that was then in effect. See Fails v. Va. State Bar, 265 Va. 3, 5 n.1, 574 S.E.2d 530, 531 n.1 (2003) (applying the Rule of Court in effect at the time of the proceedings below).

argument on appeal. Lee v. Lee, 12 Va. App. 512, 515-17, 404 S.E.2d 736, 738-39 (1991) (en banc).

Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions. See Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997). We will not consider such an argument *sua sponte*. Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*).

## B.  Motion to Amend Support

Husband contends that the circuit court erred in denying his motion to amend spousal support because the evidence established material changes in circumstances not contemplated by the parties at the time of the initial award and these changes justified modification of the support. Because we hold that husband did not timely object to the circuit court's application of the standard provided in Code § 20-109(A), we analyze this issue in light of the standard set forth in Code § 20-109(A) pursuant to the Property Settlement Agreement ("PSA").[2]

"Upon the petition of either party the court may increase . . . spousal support and maintenance . . . as the circumstances may make proper." Code § 20-109(A). "'In a petition for modification of . . . spousal support, the burden is on the moving party to prove [by a preponderance of the evidence] a material change in circumstances that warrants modification of support.'" Roberts v. Roberts, 41 Va. App. 513, 528, 586 S.E.2d 290, 297 (2003) (second alteration in original) (quoting Richardson v. Richardson, 30 Va. App. 341, 347, 516 S.E.2d 726, 729 (1999)). "Whether a change of circumstances exists is a factual finding that will not be

---

[2] The PSA provides the following with regard to modification of spousal support: "It is hereby agreed that the spousal support provisions herein may be modified by written agreement of the parties upon a material financial change of circumstances for either party, *or as otherwise decided by a competent court of jurisdiction*." (Emphasis added).

disturbed on appeal if the finding is supported by credible evidence." Ohlen v. Shively, 16 Va. App. 419, 423, 430 S.E.2d 559, 561 (1993) (quoting Visikides v. Derr, 3 Va. App. 69, 70, 348 S.E.2d 40, 41 (1986)).

With regard to any material change in circumstances, "[t]he petitioner must demonstrate a material change in circumstances from the most recent support award," id. (citing Antonelli v. Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991)), and "[t]he material change must relate to either the need for support or the ability to pay," Barton v. Barton, 31 Va. App. 175, 177-78, 522 S.E.2d 373, 374 (1999) (citations omitted). "Courts must make support awards based upon 'current circumstances and what the circumstances will be within the immediate or reasonably foreseeable future.'" Id. at 178, 522 S.E.2d at 375 (quoting Srinivasan v. Srinivasan, 10 Va. App. 728, 735, 396 S.E.2d 675, 679 (1990)). "What is 'reasonably foreseeable' depends on the circumstances of the particular case." Furr, 13 Va. App. at 482, 413 S.E.2d at 74. Thus, "[i]n considering a denial of a request for a reduction of support payments, courts must look to 'objective evidence available at the time of the previous award in order to assess what increases in expenses might reasonably have been expected.'" Barton, 31 Va. App. at 179, 522 S.E.2d at 375 (quoting Furr, 13 Va. App. at 482, 413 S.E.2d at 74). "In doing so, we avoid assessing such increases in light of evidence that these increases have, in fact, occurred." Furr, 13 Va. App. at 482, 413 S.E.2d at 74.

In its letter opinion, the circuit court found that there had been no material change in circumstances that were not within the contemplation of the parties when they entered into the PSA and denied the motion to amend spousal support. While the circuit court found that husband's income had decreased, it found that the parties knew at the time they entered into the PSA that husband's Rhode Island disability retirement pay would go down if he earned over a certain amount, that inflation existed impacting the true value of spousal support, that husband's

- 4 -

employment with the United States Coast Guard ("USCG") was not permanent, and that wife would begin a full-time job that paid her more. Thus, the issue is whether there is credible evidence supporting the circuit court's finding that the material changes in circumstances were within the contemplation of the parties when they entered into the PSA.

## 1. Wife's Job

Husband states that the circuit court's finding that the parties "knew that [w]ife would begin a job that paid" was unsupported because the evidence established that she had a paying job at the time they entered into the PSA and at the time the final decree of divorce was entered. He argues further that there is no evidence that husband knew that wife was in college, or that the parties contemplated that wife would graduate from college and would subsequently obtain full-time employment receiving a significant increase in her income. However, wife contends that the increase in wife's income was not a sufficient change in circumstances because the parties "knew [w]ife would begin a job that paid" because she already had a part-time paying position at the time they entered into the PSA and divorced. Wife further contends that the circuit court's statement was intended to mean that everyone expected wife to obtain a full-time job with a full-time salary after she graduated from college.

Our review of the record in this case does not support the circuit court's finding that the fact wife would start a "job that paid" was foreseeable and in the contemplation of the parties at the time they entered into the PSA in September 2005. In 2005, wife began attending college full time, and graduated in 2008. In 2006, wife received $14,463.50 from her part-time job, which was generally consistent with her 2005 income from six months of part-time work measured on a monthly basis. There is nothing in the record that indicates that the parties contemplated she would begin "a job that paid" since she already had a paying job, or that she would obtain a full-time position with a significant increase in her income upon graduating from

- 5 -

college.  Thus, there is no credible evidence in the record supporting the circuit court's finding, and the circuit court erred in finding otherwise.

### 2.  Husband's Employment with the USCG

Husband next contends that the circuit court's conclusion that the parties knew husband's employment with the USCG was not permanent is not established by the evidence.  Yet, husband asserts on brief that "[w]hile it is true that the parties knew that [h]usband's employment with the [USCG] was not permanent – as no employment position is ever permanent – there is absolutely no evidence in the record that the parties knew when [h]usband would leave active duty with the [USCG]."

Husband testified that when the USCG had a contract they could not fill, they activated reservists to fill the position.  When that contract ended, if there were no other contracts available, the USCG would then remove the individual from active duty and return him to reserve status.  In addition, wife testified that the parties knew that husband's job with the USCG was not permanent.  Thus, the evidence supports the circuit court's finding that the parties knew that husband's employment with the USCG was not permanent and reasonably foreseeable at the time they entered into the PSA.

### 3.  Inflation

Husband asserts that the circuit court's finding that the parties knew that inflation existed when they entered into the PSA is unsupported by any evidence in the record.  He specifically argues that the parties did not and in fact could not have known in 2006 whether economic inflation or deflation would occur between 2006 and 2010, and to what extent it would occur.

Our review of the record reveals no evidence concerning monetary inflation or the amount thereof that supports the circuit court's conclusion that inflation was actually within the contemplation of the parties or reasonably foreseeable when they entered into the PSA.  In

addition, the fact that an accountant testified that inflation actually occurred between January 2006 and December 2009 and the extent to which it occurred has no bearing on whether those facts were within the contemplation of the parties at the time they entered into the PSA or were reasonably foreseeable at that time.[3] Thus, the circuit court erred in finding that the parties contemplated the impact of inflation on the provisions of the PSA at the time they executed the PSA.

### 4. Rhode Island Disability Pension

Husband concedes that the parties clearly contemplated that husband's Rhode Island disability pension might terminate based on the language in the PSA. The PSA provides, "[w]ife will also receive fifty percent (50%) of [h]usband's Rhode Island disability pension benefits and if the husband gains employment that prohibits the payment of his retirement then he will compensate the wife for her loss of the 50% payment from Rhode Island . . . ." Thus, there is evidence supporting the circuit court's finding that the parties knew the Rhode Island pension might terminate.

In light of the lack of credible evidence supporting several of the factual findings made by the circuit court in its determination of whether material changes in circumstances were within the contemplation of the parties, the circuit court erred in finding that no material changes in circumstances occurred that were not within the contemplation of the parties and denying the modification of spousal support. Therefore, we reverse and remand to the circuit court with direction that it reconsider whether the amount of spousal support should be modified in light of

---

[3] While the husband alleges that the testimony was given by an expert, the accountant was never tendered or accepted as an expert witness in this case even though he testified that he had been previously qualified as one in other courts regarding tax calculations and the impact of inflation on spousal support awards.

the changes in circumstances that were reasonably foreseeable or within the contemplation of the parties at the time they entered into the PSA.

## C. Spousal Support Arrearages

Husband claims that the circuit court erred in concluding that he owed spousal support arrearages to wife in the amount of $8,100 as a result of the parties entering into a written agreement to reduce spousal support, consistent with the provisions of the PSA.

Code § 20-109(A) provides that "[u]pon the petition of either party the court may increase . . . spousal support and maintenance . . . as the circumstances may make proper." However, if the parties contract regarding the amount of spousal support, and the contract is filed before the final decree, "no decree or order directing the payment of support . . . for the spouse . . . shall be entered except in accordance with the . . . contract." Code § 20-109(C).

> This provision of the statute thus "limits the authority of a trial court to make or modify spousal support awards when an agreement exists. 'In such cases, the intent of the parties as expressed in the agreement controls, and the agreement is treated as a contract and construed in the same manner as all contracts.' White v. White, 257 Va. 139, 144, 509 S.E.2d 323, 325 (1999). The statute was enacted to require that decrees for support honor agreements made by the parties; it prevents a court from rewriting the parties' contract."

Doering v. Doering, 54 Va. App. 162, 171-72, 676 S.E.2d 353, 357 (2009) (quoting Smith v. Smith, 41 Va. App. 742, 751, 589 S.E.2d 439, 443 (2003)). "Simply put, 'Code § 20-109(C) expressly limits the court's authority to modify an agreed upon spousal support award according to the terms of a stipulation or contract signed by the parties.'" Brown v. Brown, 53 Va. App. 723, 727, 674 S.E.2d 597, 599 (2009) (quoting Blackburn v. Michael, 30 Va. App. 95, 100, 515 S.E.2d 780, 783 (1999)). Accordingly, because the parties have a contract that was incorporated into the final decree of divorce, the circuit court does not have the authority to modify the

spousal support except in accordance with the terms of modification in the PSA.  Parrillo v.

Parrillo, 1 Va. App. 226, 228, 336 S.E.2d 23, 24 (1985). [4]

Therefore, the issue is whether the e-mail wife sent to husband on December 28, 2008,

reducing spousal support from $1,450 to $550 from January – September 2009, constitutes a

"written agreement by the parties," and was executed with the same formalities as the PSA.  The

circuit court implicitly found that the e-mail was not a contract or written agreement between the

parties when it awarded wife $8,100 in spousal support arrearages.  Yet, husband contends that it

is undisputed that the parties had a written agreement based on wife's testimony at the *ore tenus*

hearing at which the following occurred:

> Q:  Was there ever any written agreement to modify the alimony?
>
> [Wife]:  We had the e-mail, but the whole intent was to avoid
> court.

In contravention, wife contends that the e-mail was not a contract in that it merely constituted an

offer and nothing more, and did not follow the same formalities as required by Code § 20-153

and the PSA.

> [M]odification of a contract must be shown by "clear, unequivocal
> and convincing evidence, direct or implied."  Stanley's Cafeteria,
> Inc. v. Abramson, 226 Va. 68, 73, 306 S.E.2d 870, 873 (1983).

---

[4]  Wife cites to Capell v. Capell, 164 Va. 45, 178 S.E. 894 (1935), and Richardson v. Moore, 217 Va. 422, 229 S.E.2d 864 (1976), to support her claim that parties cannot modify spousal support without obtaining a court order.  However, neither case includes a property settlement agreement specifically providing that the parties can modify support by written agreement.  Capell, 164 Va. at 49, 178 S.E. at 895 ("The case is entirely different from that in which the parties, pending a final decree, enter into an agreement respecting their property rights which the court adopts and approves." (citing Barnes v. American Fertilizer Co., 144 Va. 692, 130 S.E. 902 (1925))); Richardson, 217 Va. at 422, 229 S.E.2d at 865 ("Richardson was ordered [by decree] to pay appellant $75 per month 'for the support of herself and the said infant child . . . until the further order of Court but with the right to both of said parties to petition the Court to increase, decrease, or cause to cease, such alimony, as the circumstances may make proper . . . .").  Thus, neither cited case is applicable to the facts of this case, and husband and wife could modify spousal support pursuant to the PSA.  See Shoup v. Shoup, 37 Va. App. 240, 556 S.E.2d 783 (2001) (holding the agreement's provisions allowing modification of child support without a court order were valid and enforceable).

> We have also held that contracting parties, through a course of dealing, may evince a mutual intent to modify the terms of their contract. The circumstances surrounding the conduct of the parties must be sufficient to support a finding of mutual intention that the modification be effective and such intention must be shown by clear, unequivocal, and convincing evidence, direct or implied. Id.

Reid v. Boyle, 259 Va. 356, 369, 527 S.E.2d 137, 145 (2000). The Virginia Uniform Electronic Transactions Act provides, "[a] contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation." Code § 59.1-485. With regard to the same formalities, the PSA was signed by both parties, witnessed and notarized by a public notary, and dated.

First, wife's contention that Code § 20-153 applies to the subsequent modification of the spousal support through Code § 20-155 is misplaced. Code § 20-155 applies to marital agreements between married persons, and sets forth that married persons can enter into an agreement settling their rights and obligations subject to the conditions for agreements between prospective spouses. However, the modification to the spousal support is not an agreement between married persons, but rather is an agreement between two individuals who are no longer married nor prospective spouses. In addition, husband and wife were not amending or revoking the PSA, but were modifying it pursuant to the terms of the PSA. Thus, Code § 20-153 setting forth the requirements for amendments or revocations to agreements between prospective spouses is not applicable to this case.

In turning to the e-mail modification, the PSA and the final decree of divorce in this case both provide for modification of the spousal support provisions "by written agreement of the parties upon a material financial change of circumstances for either party, or as otherwise decided by a competent court of jurisdiction." The PSA also provides a general modification provision that "no portion hereof may be modified or waived unless in writing executed with the same formality as this Agreement." "In reconciling . . . [contractual] provisions, any apparent

- 10 -

inconsistency between a clause that is general and broadly inclusive in character, and a clause that is more specific in character, should be resolved in favor of the latter." Chantilly Constr. Corp. v. Commonwealth, 6 Va. App. 282, 294, 369 S.E.2d 438, 445 (1998) (citations omitted); see also Bott v. N. Snellenburg & Co., 177 Va. 331, 339, 14 S.E.2d 372, 375 (1941) ("'[W]here there is a repugnancy, a general provision in a contract must give way to a special one covering the same ground.'" (quoting Harrity v. Cont'l-Equitable Title & Trust Co., 124 A. 493, 495 (Pa. 1924))).

Here, the clauses are not repugnant to each other and can easily be harmonized. Thus, the parties could modify spousal support by a written agreement as the specific provision in the PSA sets forth, but the modification must be executed with the same formality as the PSA in compliance with the general provision formality requirement.

In turning to the facts, the evidence in the record does not establish that the e-mail modified the spousal support by clear, unequivocal, and convincing evidence. The e-mail from the wife begins by noting that "I will accept . . ." and concludes with "Please submit any questions or objections to these terms in writing by reply email." These provisions are not clear and unequivocal statements such that the written agreement evinces a contract. Wife did not specifically state that the amount was reduced, but merely stated that she would accept $900 less in alimony. Furthermore, the record does not evince whether husband agreed to and accepted the specific terms in the e-mail or if he had any objections to the terms. All we have on the record is that he paid the lesser amount January – September 2009 which does not constitute clear, unequivocal, and convincing evidence that there was a mutual intention of modification.

With regard to the formalities, the e-mail was not executed with the same formalities as the PSA. The e-mail merely contains the wife's first name as her "signature," and is lacking both the husband's signature and a notary witnessing both parties' signatures with the date the

modified agreement was signed.  Accordingly, we hold that the trial court did not err in finding husband's spousal support in arrears due to the absence of a written agreement with the same formalities as the PSA between the parties modifying the spousal support, and affirm.

### D.  Unreimbursed Medical Expenses

Lastly, husband argues that the circuit court erred in taking evidence and ruling on the issue of husband's alleged failure to pay K.M.'s unreimbursed medical expenses because wife had not filed a motion or notice alleging the same, and, therefore, husband had no notice that this was an issue in this case.

"'Fundamental rules of pleading provide that no court can base its judgment or decree upon a right which has not been pleaded and claimed.'"  Fadness v. Fadness, 52 Va. App. 833, 843, 667 S.E.2d 857, 862 (2008) (quoting Boyd v. Boyd, 2 Va. App. 16, 18, 340 S.E.2d 578, 580 (1986)).  "'Pleadings are as essential as proof, the one being unavailing without the other.  A decree can not be entered in the absence of pleadings upon which to found the same, and if so entered it is void.'"  Fadness, 52 Va. App. at 843, 667 S.E.2d at 862 (quoting Potts v. Mathieson Alkali Works, 165 Va. 196, 207, 181 S.E. 521, 525 (1935)); see also Reid v. Reid, 24 Va. App. 146, 150, 480 S.E.2d 771, 773 (1997) ("[T]he absence of a specific request for an adjudication of spousal support [precludes courts] from obtaining jurisdiction over that subject matter." (citing Rogers v. Damron, 23 Va. App. 708, 479 S.E.2d 540 (1997))).  "This well established principle recognizes that the 'office of pleadings is to give notice to the opposing party of the nature and character of the claim, without which the most rudimentary due process safeguards would be denied.'"  Reid, 24 Va. App. at 149, 480 S.E.2d at 772 (quoting Boyd, 2 Va. App. at 19, 340 S.E.2d at 580).

At the *ore tenus* hearing, the circuit court responded to husband's objection to the medical expenses by ruling, "I have a motion filed February 3 claiming unpaid support and so I

think it's enough notice." Yet, the only pleading by wife addressed a request for additional spousal support and a request to establish husband's spousal support arrearages. Wife's motion did not raise the issue of child support arrearages or husband's failure to pay unreimbursed extraordinary medical expenses, and thus the husband had no notice that these issues would be addressed at trial. In addition, wife concedes on brief that her February 3 motion to the circuit court alleges only unpaid spousal support and did not give husband notice that she was also claiming arrears in unreimbursed medical expenses. She then concedes that the circuit court erred by ordering husband to pay the arrears because husband did not receive notice. Therefore, the circuit court erred in accepting evidence and making a determination with regard to the unreimbursed extraordinary medical expenses.

However, wife claims the circuit court error was harmless because the husband did not present evidence that the amount was not actually owed and also because the amount of time spent in the circuit court, this Court, and potentially the circuit court again on this issue is materially greater than the sum at issue, $266.82. Rule 5A:20(e) provides, in part, that the opening brief shall include "[t]he principles of law, the argument, and the authorities relating to each question presented." "'Statements unsupported by argument, authority, or citations to the record do not permit appellate consideration.'" Shiembob v. Shiembob, 55 Va. App. 234, 242, 685 S.E.2d 192, 197 (2009) (quoting Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008)). "If the parties believed that the circuit court erred, it was their duty to present that error to [the Court of Appeals] with legal authority to support their contention." Fadness, 52 Va. App. at 851, 667 S.E.2d at 866. Because wife failed to provide the legal authority to support her argument that the error was harmless, and because this failure to adhere to the mandates of Rule 5A:20(e) is significant, we are unable to consider it.

We reverse and vacate the trial court's ruling on this issue.

E.  Appellate Attorney Fees

Wife moves for an award of attorney's fees and costs for matters relating to this appeal.

Upon consideration of the entire record in this case, we hold that wife is not entitled to attorney's

fees and costs incurred in this appeal and deny her request.

> "The rationale for the appellate court being the proper forum to
> determine the propriety of an award of attorney's fees for efforts
> expended on appeal is clear.  The appellate court has the
> opportunity to view the record in its entirety and determine
> whether the appeal is frivolous or whether other reasons exist for
> requiring additional payment."

Andrews v. Creacey, 56 Va. App. 606, 637, 696 S.E.2d 218, 232-33 (2010) (quoting O'Loughlin

v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996)).  After consideration of the

entire record, we find "'the litigation addressed appropriate and substantial issues . . . .'" Id.

(quoting Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004)).

## II.  CONCLUSION

For the foregoing reasons, we affirm in part, reverse and remand in part, and reverse and

vacate in part.

Affirmed in part, reversed and remanded in part,
and reversed and vacated in part.